

**The New York Times Company**

Charlie Savage

T 202 862 0300

savage@nytimes.com

1627 I Street NW, Suite 700
Washington, DC 20006

February 10, 2025

Case: 1:25-mc-00008
Assigned To : Boasberg, James E.
Assign. Date : 2/10/2025
Description: Misc.

VIA ONLINE DELIVERY

Hon. Chief U.S. District Court Judge James E. Boasberg
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue NW
Washington, DC 20001

Dear Chief Judge Boasberg,

This is a petition that the court unseal certain litigation materials ancillary to the grand jury investigations that led to the federal cases against President Donald J. Trump regarding his efforts to overturn his loss of the 2020 election and his retention of classified documents after leaving office. Specifically, I request that the court please unseal all ancillary opinions and orders, along with related dockets, hearing transcripts and pleadings filed by the government, witnesses, subjects and targets, from pre-indictment litigation over claims of attorney-client and attorney work product privilege. The public and the press have a First Amendment right of access to judicial records, and especially now that the cases against Trump are closed,[1] disclosure of materials regarding litigation over attorney-related privileges in this historic matter would be lawful and appropriate under Federal Rule of Criminal Procedure 6(e).

To recap, last October, the court unsealed similar ancillary materials related to assertions of executive privilege in the election case investigation. That disclosure grew out of two petitions filed in October 2022, one by The New York Times and myself and the other by Politico and its reporter Kyle Cheney. We filed those requests at a time when there had already been news reports about the grand jury investigation, including that it had been slowed

---

[1] While the government dropped both the election and classified documents cases against Trump because he won the 2024 election, as of this writing, the remnants of the classified documents case remain technically active. Specifically, while a trial judge dismissed the entire case on a theory that the special counsel had been appointed improperly, the government appealed that dismissal to the U.S. Court of Appeals for the Eleventh Circuit. That matter remains technically active for Trump's two codefendants. However, more than a week ago, the government has filed an unopposed motion to dismiss the remnants of the case as to them, too.

RECEIVED
FEB 10 2025
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

by executive privilege disputes. But the government opposed any unsealing, arguing that despite the widespread media coverage of the investigation and privilege disputes, they had not been formally disclosed in public. In February 2023, your predecessor as chief, Judge Beryl Howell, ruled against us on the grounds that news reporting alone, in the absence of formal public acknowledgement, was insufficient. At that point, The Times dropped out of the litigation, but Politico appealed. Before the U.S. Court of Appeals for the District of Columbia Circuit addressed the matter, the special counsel, Jack Smith, obtained an indictment of Trump, and several weeks later, on August 28, 2023, a prosecutor on Smith's team stated in open court that there had indeed been pre-trial litigation regarding executive privilege and the scope of grand jury testimony for witnesses. Citing that intervening formal disclosure, a panel of the D.C. Circuit in April 2024 vacated Judge Howell's ruling and sent the case back to the district court for reconsideration based on the following rationale:

> Courts may unseal records containing matters occurring before a grand jury only if the matters have already been publicly disclosed … Here, the Office of Special Counsel that empaneled the grand jury publicly disclosed that grand-jury witnesses invoked executive privilege and that the district court held hearings to resolve those claims. That disclosure, coupled with the press's extensive reporting about the privilege disputes, makes it possible that the underlying privilege disputes, or at least the aspects of them that have been publicly disclosed, are so widely known that they are no longer protected by Rule 6(e).

The Justice Department did not dispute that the legal standard had been met to disclose the executive privilege litigation records. It curated a set and submitted them to this court, which on October 24, 2024, ordered those materials unsealed and posted on the public docket.

The same standard is met for the attorney-related privilege disputes in these two closed investigations. Both are widely known through a combination of having been reported on by the press and then formally disclosed in public court proceedings.

In the election case, the press reported on the attorney-related privilege disputes alongside the executive privilege disputes. See, e.g., Alan Feuer and Maggie Haberman, "Trump Lawyers Push to Limit Aides' Testimony in Jan. 6 Inquiry," *The New York Times,* Sept. 23, 2022 (reporting that the "closed-door battle, unfolding in Federal District Court in Washington, has centered on how far Mr. Trump can go in asserting attorney-client and executive privilege as a means of keeping witnesses close to him from answering potentially damaging questions in their appearances before the grand jury").

And the Office of the Special Counsel publicly acknowledged that grand-jury witnesses invoked attorney-related privileges, leading to court orders requiring the production of material claimed to be privileged. Specifically, Smith's team on October 10, 2023, publicly docketed a filing entitled, "Government's Opposed Motion for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice-of-Counsel Defense." It stated:

> During the course of the Government's investigation, at least 25 witnesses withheld information, communications, and documents based on assertions of the attorney-client privilege under circumstances where the privilege holder appears to be the defendant or his 2020 presidential campaign. These included co-conspirators, former campaign employees, the campaign itself, outside attorneys, a non-attorney intermediary, and even a family member of the defendant.
>
> …
>
> The Government produced in discovery the privilege logs for each witness who withheld material on the basis of a claim of privilege on behalf of the defendant or his campaign, and in some cases the defendant's campaign was directly involved in discussions regarding privilege during the course of the investigation. In other instances, the Government produced court orders requiring the production of material claimed to be privileged.

This public disclosure by prosecutors, coupled with the press's reporting, means that the underlying attorney-related privilege disputes in the Jan. 6 inquiry are so widely known that they are no longer protected by Rule 6(e).[2]

The standard is just as clearly met for unsealing the attorney-related privilege litigation records from the classified documents grand-jury investigation.

Once again, the press reported on the closed-door attorney-related privilege fights involving two lawyers for Trump, M. Evan Corcoran and Jennifer Little. See, e.g., Alan Feuer and Maggie Haberman, "Judge Rules Trump Lawyer Must Testify in Documents Inquiry," *The New York Times*, March 17, 2022 (reporting that Judge Howell had ruled that prosecutors overseeing the classified documents investigation could pierce assertions of attorney-client privilege and compel Corcoran to answer questions before the grand jury that he had sought to avoid); Maggie Haberman and Alan Feuer, "Lawyer Told Trump Defying Documents Subpoena Would Be a Crime," *The New York Times*, Nov. 29, 2022 (reporting that Little was initially subpoenaed to appear before the grand jury on Jan. 25 of that year but, like Corcoran, asserted attorney-client privilege in an attempt to avoid providing

---

[2] It is also no secret that various lawyers who were witnesses or unindicted co-conspirators in the election case tried to withhold information based on attorney-related privileges in other contexts. For example, Judge Howell earlier unsealed memorandum opinions she wrote on June 27 and September 27, 2022, and a related Sept. 27, 2022, order, from a fight over whether a filter team could turn over to the investigative team materials involving the lawyers John Eastman, Jeffrey Clark and Ken Klukowski that the government obtained via search warrants served on third-party email providers. Subpoenas from the House committee that investigated the Jan. 6 Capitol riot and from the Fulton County Special Grand Jury investigating the 2020 election also resulted in publicly acknowledged attempts to withhold information based on attorney-related privileges. See, e.g, the March 28, 2022, ruling by Judge David O. Carter of the Central District of California that the crime-fraud exemption applied to Chapman University emails of Eastman; an Aug. 31, 2022, public statement by Eastman's lawyers regarding his invocation of the privilege in the Fulton County inquiry; a Sept. 20, 2023, motion to exclude legal memoranda and affiliated correspondence by attorneys for Kenneth Chesebro in his Fulton County case stating that at Trump's direction, "Mr. Chesebro has consistently asserted the attorney-client privilege and work-product provision over these documents (January 6 Committee interview, Fulton County Grand Jury proceedings, etc.)"; etc.

testimony, until Judge Howell that March ruled that the crime-fraud exception applied).

And once again, court filings – this time by defense attorneys as well as prosecutors – openly discussed, in detail, that Judge Howell had held hearings to resolve claims of attorney-related privilege. These disclosures are found in a defense filing entitled "President Trump's Motion for Relief Relating to the Mar-a-Lago Raid and Unlawful Piercing of Attorney Client Privilege," which describes and quotes from a February 7, 2023, motion to compel; a March 9 hearing; and Judge Howell's partial grant and partial denial of the motion, including the compelled production of documents, recordings and testimony. Attached to this filing, though redacted in the version that was publicly docketed on May 21, 2024, were the relevant court records. Also on May 21, the government's opposition to that motion was docketed. It succinctly described the matter thus:

> A grand jury in the District of Columbia subpoenaed Trump Attorney 1 and Trump Attorney 2 to provide testimony and documents. Both attorneys withheld evidence on the ground that it should be kept secret under the attorney-client and work-product privileges. The Government filed a motion with the then-Chief Judge of the District of Columbia (Hon. Beryl A. Howell), who supervises grand jury proceedings in that district, to compel testimony and documents from Trump Attorney 1 and Trump Attorney 2 on the basis that the crime-fraud exception vitiated the attorney-client and work product privileges. See Def. Exs. 15, 16. After receiving briefing and argument, including from Trump, the court partially granted the Government's motion. See Def. Ex. 18 (memorandum opinion); Def. Exs. 17, 19 (orders). Trump and Trump Attorney 1 both filed appeals and motions for stays of the court's order pending their appeals, but both the Chief Judge of the District of Columbia (Hon. James E. Boasberg) and the D.C. Circuit denied the stay motions. Trump Attorney 1 and Trump Attorney 2 testified before the grand jury in compliance with the court's order, and Trump Attorney 1 produced documents, including a redacted version of his notes of meetings with Trump. Both Trump Attorney 1 and Trump voluntarily dismissed their appeals in the D.C. Circuit.

This public disclosure by both defense lawyers and prosecutors, coupled with the press's reporting, means that the attorney-related privilege disputes in the classified documents inquiry, too, are also so widely known that they are no longer protected by Rule 6(e).

In sum, the disclosure of both sets of materials would be both lawful and appropriate. Thank you for your consideration of this petition.

Sincerely,

*Charlie Savage*

Charlie Savage
Washington Correspondent
The New York Times