**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| IN RE DONALD J. TRUMP | ) ) ) | Case No. 1:25-mc-8-JEB (D.D.C.) |

**RESPONSE OF THE UNITED STATES TO
APPLICATION OF CHARLIE SAVAGE FOR ACCESS TO
<u>JUDICIAL RECORDS ANCILLARY TO GRAND JURY INVESTIGATIONS</u>**

## INTRODUCTION

Petitioner seeks access to opinions, orders, and docket sheets regarding alleged disputes involving attorney-client privilege and attorney work product protection ancillary to grand juries in this District whose investigations led to now-dismissed federal indictments against President Trump.[1] Records of matters occurring before a grand jury, including judicial records of ancillary disputes, are protected from disclosure by Federal Rule of Criminal Procedure 6(e), unless and until there have been official disclosures sufficient to lift that secrecy.

In arguing that Rule 6(e) secrecy no longer applies, Petitioner relies in part on press reports based on unnamed sources asserting that such disputes have occurred. "[P]ublic reporting . . . rel[ying] on unnamed sources" does not provide "the type of confirmation . . . sufficient to make secrecy no longer necessary." *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former President Trump's Commc'ns with his Att'ys*, 687 F. Supp. 3d 132, 137 (D.D.C. 2023) (quotation and citation omitted). To the extent Petitioner's assertion that such records exist relies solely on such press reports, "'the government is obligated to stand silent' and not confirm the information, whether it is accurate or not." *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) (quoting *Barry v. United States*, 740 F. Supp. 888, 891 (D.D.C. 1990)). The Court is likewise "constrained to neither confirm nor deny the existence of [such] records." *In re Press Application*, 687 F. Supp. 3d at 140.

Petitioner also relies to some extent on government disclosures in public court filings regarding certain disputes. In contrast to press reports based on unnamed sources, public disclosures by the government in a court filing can lift Rule 6(e) secrecy. Still, the Court must

---

[1] As described below, Petitioner initially sought all judicial records regarding such alleged disputes, but he has since agreed to narrow his request to opinions, orders, and docket sheets, while reserving the right to seek additional documents in the future. *See infra*, pp. 3-4.

"reveal[] only those matters before the grand jury" that such court filings disclose, leaving "[a]ll other 6(e) material . . . tucked safely behind the grand jury's closed doors." *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Proc. Concerning Former Vice President Pence*, 678 F. Supp. 3d 135, 146 (D.D.C. 2023). The court filings cited by Petitioner reveal the existence of certain disputes involving attorney-client privilege or attorney work product protection. The Court can therefore release redacted versions of records sought by Petitioner regarding disputes whose existence has been disclosed in public court filings. However, those records must be redacted to protect the secrecy of matters occurring before the grand jury that have not already been disclosed.

## BACKGROUND

### I. Grand Jury Investigations Regarding President Trump

Two grand juries in this District conducted investigations that led to federal indictments of President Trump, which have since been dismissed.

*First*, a grand jury in this District conducted an investigation concerning the aftermath of the 2020 presidential election. That grand jury later returned an indictment against President Trump. *See* Indictment, *United States v. Trump*, 1:23-cr-257 (D.D.C. Aug. 1, 2023), ECF No. 1 ("*Trump Election Case*");[2] *see also* Superseding Indictment, *Trump Election Case* (Aug. 27, 2024), ECF No. 226. The district court ultimately granted the government's requests to dismiss the Indictment and Superseding Indictment in the election case. *See* Order, *Trump Election Case* (Nov. 25, 2024), ECF No. 283; Order, *Trump Election Case* (Dec. 6, 2024), ECF No. 285.

*Second*, a grand jury in this District conducted an investigation that led to an indictment of President Trump and Waltine Nauta in the Southern District of Florida concerning the handling of

---

[2] This brief refers to this matter as the "election case."

2

certain documents. *See* Indictment, *United States v. Trump*, No. 9:23-cr-80101-AMC (S.D. Fla. June 8, 2023), ECF No. 3 ("*Trump Documents Case*").[3] A grand jury subsequently returned a superseding indictment that added Carlos De Oliveira as a defendant. *See* Superseding Indictment, *Trump Documents Case*, (July 27, 2023), ECF No. 85. The district court later entered an order dismissing the Superseding Indictment, holding that the Special Counsel who led the prosecution was unconstitutionally appointed. Order Granting Motion to Dismiss Superseding Indictment Based on Appointments Clause Violation, *Trump Documents Case*, (July 15, 2024), ECF No. 672. Although the government initially appealed from this order, the government later filed an unopposed motion to dismiss the appeal, which the Eleventh Circuit granted. Transmission of Court's Order of Dismissal, *Trump Documents Case* (Feb. 11, 2025), ECF No. 716.

## II.     This Application

On February 10, 2025, Petitioner, a journalist with the New York Times, filed the Application, which was docketed as a miscellaneous case before this Court. *See* Application, ECF No. 1 ("Application" or "Appl."). The Application "request[s] that the court please unseal all ancillary opinions and orders, along with related dockets, hearing transcripts and pleadings filed by the government, witnesses, subject and targets, from pre-indictment litigation over claims of attorney-client and attorney work product privilege" regarding "the grand jury investigations that led to" the election case and the documents case. *Id.* at 1. In subsequent communications between undersigned counsel and in-house counsel for the New York Times, Petitioner agreed to narrow his request to (a) opinions and orders resolving disputes over the attorney-client privilege and attorney work product protection and (b) the relevant dockets giving rise to the opinions and orders,

---

[3] This brief refers to this matter as the "documents case."

while reserving the right to seek further documents in the future.[4] This response accordingly addresses Petitioner's narrowed request.

In arguing that the Court should unseal these records, Petitioner relies in part on press reports based on anonymous sources. *See id.* at 3-4 (citing several press reports). Petitioner also relies to some extent on certain public court filings in the election case and the documents case, described herein. *See id.* at 3, 5.

In the election case, the government filed a motion asking the court to require that President Trump provide formal notice of intent to rely on an advice-of-counsel defense. *See* Government's Opposed Motion for Formal Pretrial Notice of the Defendant's Intent to Rely on Advice-of-Counsel Defense, *Trump Election Case*, (Oct. 10, 2023), ECF No. 98. In that filing, the government disclosed that, "[d]uring the course of the Government's investigation, at least 25 witnesses withheld information, communications, and documents based on assertions of the attorney-client privilege." *Id.* at 1. For some unspecified number of those witnesses, the government obtained "court orders requiring the production of material claimed to be privileged." *Id.* at 8. The filing did not disclose the names of the witnesses or the factual subject matter of the information over which witnesses asserted privilege. The filing did not mention whether any witness withheld information on the basis of attorney work product protection.

In the documents case, both President Trump and the government submitted filings concerning a dispute involving assertions of attorney-client privilege and attorney work product protection by two of President Trump's attorneys. These filings were originally made under seal, but the court later unsealed public versions in redacted form. President Trump filed a motion

---

[4] Although Petitioner is pursuing this matter *pro se*, in-house counsel for the New York Times advised that he was authorized to speak on behalf of Petitioner regarding this agreement to narrow Petitioner's request.

4

seeking suppression of evidence the government obtained from those two attorneys. *See* President Trump's Motion for Relief Relating to the Mar-a-Lago Raid and Unlawful Piercing of Attorney-Client Privilege, *Trump Documents Case* (May 21, 2024), ECF No. 566.[5] The exhibits to the public version of this filing include redacted versions of several records from a sealed grand jury matter regarding a dispute over this evidence, including an opinion and orders of then-Chief Judge Howell resolving the dispute. *See id.* exs. 17-19 (May 21, 2024), ECF Nos. 566-8, 566-9, 566-10.

The government initially filed its opposition to this motion under seal on March 7, 2024, and a redacted version of the opposition was unsealed on May 21, 2024. *See* Government's Opposition to Donald J. Trump's Motion for Dismissal or Suppression of Evidence Obtained from Mar-a-Lago or his Attorneys (May 21, 2024), ECF No. 567. The opposition stated in part:

> The Government filed a motion with the then-Chief Judge of the District of Columbia (Hon. Beryl A. Howell), who supervises grand jury proceedings in that district, to compel testimony and documents from Trump Attorney 1 and Trump Attorney 2 on the basis that the crime-fraud exception vitiated the attorney-client and work product privileges. *See* Def. Exs. 15, 16. After receiving briefing and argument, including from Trump, the court partially granted the Government's motion. *See* Def. Ex. 18 (memorandum opinion); Def. Exs. 17, 19 (orders). Trump and Trump Attorney 1 both filed appeals and motions for stays of the court's order pending their appeals, but both the Chief Judge of the District of Columbia (Hon. James E. Boasberg) and the D.C. Circuit denied the stay motions. Trump Attorney 1 and Trump Attorney 2 testified before the grand jury in compliance with the court's order, and Trump Attorney 1 produced documents, including a redacted version of his notes of meetings with Trump. Both Trump Attorney 1 and Trump voluntarily dismissed their appeals in the D.C. Circuit. *See* Order, *In re Sealed Case*, No. 23-3035 (D.C. Cir. May 1, 2023); Order, *In re Sealed Case*, No. 23-3036 (D.C. Cir. Oct. 4, 2023).

*Id.* at 16-17. These public filings do not name either of the attorneys involved. Their names are either redacted, or they are referred to as "Trump Attorney 1" and "Trump Attorney 2."[6] In

---

[5] This motion was originally filed under seal on February 22, 2024, and a redacted version was publicly filed on the docket on May 21, 2024.

[6] In this brief, the government refers to the attorneys as Trump Attorney 1 and Trump Attorney 2, consistent with the above government brief from the documents case.

addition, the public filings do not state whether or not there were disputes about attorney-client privilege or work-product protection involving any other witnesses in the documents case.

## ARGUMENT

### I. Legal Principles Regarding Grand Jury Secrecy

The federal grand jury occupies a unique and important position in our criminal justice system. "It serves the 'dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.'" *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423 (1983) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 686–87 (1972)). Accordingly, it "serv[es] as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992). To fulfill this important role, the grand jury has "always" been afforded "extraordinary powers of investigation" and "great responsibility for directing its own efforts." *Sells Eng'g*, 463 U.S. at 423. The Supreme Court "consistently [has] recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*, 441 U.S. 211, 218 (1979). Both "grand jury proceedings and related matters operate under a strong presumption of secrecy." *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000). This rule of secrecy is "so well established" that the D.C. Circuit has noted "a plethora of authority recognizing that the grand jury context presents an unusual setting where privacy and secrecy are the norm." *In re Grand Jury Subpoena, Judith Miller* ("*Miller I*"), 438 F.3d 1141, 1150 (D.C. Cir. 2006) (quoting *In re Sealed Case*, 199 F.3d at 526).

Federal Rule of Criminal Procedure 6(e) implements the traditional rule of grand jury secrecy. It prohibits virtually every person privy to grand jury proceedings — other than witnesses or their counsel — from "disclos[ing] a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). Covered individuals include grand jurors, interpreters, court reporters, and attorneys

6

for the government. *See id.* Rule 6(e) requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before the grand jury." *Id.* at 6(e)(6). Matters occurring before the grand jury include "not only what has occurred and what is occurring, but also what is likely to occur" in the grand jury's investigation. *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998). The Rule covers all "information that would 'tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors.'" *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 73 (D.C. Cir. 2018) (quoting *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013)). Rule 6(e) also covers "the fact that [a witness] was subpoenaed to testify" and "the fact that he invoked [a] privilege in response to questions." *Dow Jones*, 142 F.3d at 501. Rule 6(e) contains certain exceptions to the rule of grand jury secrecy, but that "list of exceptions is exhaustive." *McKeever v. Barr*, 920 F.3d 842, 845 (D.C. Cir. 2019). Grand jury secrecy does not expire upon the conclusion of an investigation or a criminal case. *See id.* at 843-44 (holding that records from a grand jury investigation during the 1950s remained protected by Rule 6(e)).

Despite the general rule of grand jury secrecy, under certain circumstances, "when once-secret grand jury material becomes 'sufficiently widely known,' it may 'los[e] its character as Rule 6(e) material.'" *In re Grand Jury Subpoena, Judith Miller* ("*Miller II*"), 493 F.3d 152, 154 (D.C. Cir. 2007) (alteration in original) (quoting *In re North*, 16 F.3d at 1245). One way that "grand jury matters may lose their protection" is "if prosecutors publicly disclose them." *In re Application of Politico*, No. 23-5071, 2024 WL 1739096, at *3 (D.C. Cir. Apr. 23, 2024) (citing *North*, 16 F.3d at 1245). Public disclosure of grand jury matters "by a witness before the grand jury, or a witness's

7

attorney" can also lift grand jury secrecy. *Id.*

By contrast, press reporting based on anonymous sources does not undermine grand jury secrecy. *See id.* at *3 ("Anonymous leaks, however, do not strip Rule 6(e) protection from grand jury matters."); *see also Dow Jones*, 142 F.3d at 505 (matters occurring before grand jury did not lose Rule 6(e) protection "because of press reports relying on unnamed sources"). Such "public reporting . . . rel[ying] on unnamed sources" does not provide "the type of confirmation by government attorneys, grand jury witnesses, or a privilege holder that the Circuit has found sufficient to make secrecy no longer necessary." *In re Press Application*, 687 F. Supp. 3d at 137 (quotation and citation omitted). Indeed, "when the media reports information alleged to be grand jury material, 'the government is obligated to stand silent' and not confirm the information, whether it is accurate or not." *In re North*, 16 F.3d at 1245 (D.C. Cir. 1994) (quoting *Barry*, 740 F. Supp. at 891).

Even when a disclosure has lifted grand jury secrecy over the disclosed information, that does not eliminate Rule 6(e)'s protection for all matters occurring before the grand jury. Rather, "materials" that "concern still-secret grand jury matters . . . must remain sealed." *Miller II*, 493 F.3d at 154. Documents containing grand jury matters can be revealed "only to the extent that they have been previously revealed," but "[g]rand jury material not yet publicly disclosed" must "remain redacted." *Id.* at 155. Therefore, courts regularly order limited unsealing concerning grand jury matters already made public, while holding that documents must remain secret insofar as they discuss grand jury matters not publicly disclosed. *See*, *e.g.*, *id.* at 154-55; *Pence*, 678 F. Supp. 3d at 143 (describing the scope of "appropriate redactions" to materials concerning a grand jury privilege dispute, so that discussion of matters occurring before the grand jury is redacted "to the extent that [the grand jury witness's] disclosures do not already reveal them").

8

## II. The Election Case

In arguing for access to judicial records concerning the election grand jury's investigation, Petitioner cites both press reports relying on anonymous sources, and a public filing by the government in the election case. *See* Appl. 3. Such press reports "do not strip Rule 6(e) protection from grand jury matters." *In re Application of Politico*, 2024 WL 1739096, at *3. Public disclosures by the government can lift grand jury secrecy, but only to the extent that the disclosures actually reveal matters occurring before the grand jury.

Petitioner requests records concerning disputes "over claims of attorney-client and attorney work product privilege." Appl. 1. Although he groups these two protections (*i.e.*, attorney-client privilege and attorney work product protection) together, the court filing cited by Petitioner contains disclosure only about assertions of attorney-client privilege, not attorney work product protection. Therefore, with respect to alleged records regarding assertions of attorney work product protection, "the government is obligated to stand silent," *In re North*, 16 F.3d at 1245, and neither confirm nor deny the existence of any such materials. This Court must likewise refrain from "releas[ing] or deny[ing] the existence of records related to such dispute," because doing so "would necessarily also confirm or deny whether a witness was indeed called to testify to, and invoked [attorney work product protection] before, the grand jury." *In re Press Application*, 687 F. Supp. 3d at 137; *see also id.* at 140 ("the Court . . . is constrained to neither confirm nor deny the existence of the records the Press seeks at this time").

As described above, the government has made a limited public disclosure about disputes concerning attorney-client privilege with respect to the election case. *See supra*, p. 4. Specifically, the government disclosed that witnesses withheld information based on the attorney-client privilege, and that for some unspecified number of witnesses, the government obtained "court orders requiring the production of material claimed to be privileged." *Trump Election Case*, ECF

9

No. 98, at 1, 8. Based on this disclosure, the Court can release in redacted form the opinions and orders resolving disputes over the attorney-client privilege in the election case, and the docket sheets from those matters. However, the records must be redacted to prevent disclosure of any matters occurring before the grand jury that were not disclosed by the government, which remain protected by Rule 6(e). In particular, the government has not disclosed the names of the witnesses, the factual subject matter of the information over which witnesses asserted privilege, or how the government sought to use this information for such investigation. Any reference to such matters in the materials sought by Petitioner must be redacted.

       This Court's approach to redactions in *Pence* is instructive. "In a series of three public statements," former Vice President Pence or his spokesperson disclosed that: (1) he had received a grand jury subpoena and intended to resist it; (2) he contested the subpoena on the basis that the Speech and Debate Clause protected him from being subpoenaed to testify regarding his role presiding over the joint session of Congress on January 6, 2021; (3) the federal judge had "accepted [his] argument," at least in part, and "recognized that the Constitution's speech and debate provisions do apply to the Vice President when one is serving as president of the Senate," although under the court's ruling, "other testimony might be required"; and (4) he decided "not [to] appeal the Judge's ruling" and instead decided to "comply with the subpoena as required by law." *Pence*, 678 F. Supp. 3d at 138-39 (first alteration in original) (citations omitted). The Court concluded that certain materials concerning the dispute over the subpoena could be released, because "Pence's public statements disclose his constitutional challenge to the subpoena, this Court's partial rejection of that challenge, and his intent to testify before the grand jury." *Id.* at 142.

       Nonetheless, despite former Vice President Pence's public disclosures, this Court held that the materials it released had to be redacted in significant part to protect the secrecy of matters

10

occurring before the grand jury that former Vice President Pence had not disclosed. For example, this Court concluded that documents, including a judicial opinion resolving the privilege dispute, "must be redacted to remove any references to the parties' or the Court's understanding of what, if any, specific testimony the grand jury sought from Pence or the factual or strategic basis for such subpoena — to the extent that his disclosures do not already reveal them." *Id.* at 143; *accord id.* ("Information about any specific testimony the grand jury may seek from Pence can be similarly redacted." (citation omitted)).

By the same token, records here must be redacted to remove references to the identity of the witnesses, the substance of the witnesses' testimony, the factual subject matter of the information over which they asserted privilege, and how the information sought from these witnesses fit with the government's strategy for the investigation. Those are clearly matters occurring before the grand jury that are protected by Rule 6(e). *See Bartko*, 898 F.3d at 73 (matters occurring before grand jury include "the identities of witnesses," "the substance of testimony," or "the strategy or direction of the investigation" (quoting *Hodge*, 703 F.3d at 580)). Furthermore, both "the fact that [a witness] invoked the privilege in response to questions" and "the nature of the questions asked" are matters occurring before the grand jury protected by Rule 6(e). *Dow Jones*, 142 F.3d at 501. Although the government's filing disclosed that certain unnamed witnesses invoked the attorney-client privilege, the government has not disclosed the nature of the questions that prompted invocation of the privilege.

The government requests an opportunity to make an *ex parte* sealed submission to the Court containing proposed redactions of the requested records concerning disputes involving

11

attorney-client privilege in the election case, reflecting what parts of the records can be released consistent with Rule 6(e) and governing law.[7]

### III.    The Documents Case

With respect to the documents case, Petitioner again relies on a mix of press reports based on unnamed sources and public court filings. *See* Appl. 4-5. As explained above, such press reports do not support access to any materials protected by Rule 6(e). *See supra*, p. 8. The court filings cited by Petitioner relate solely to a dispute involving Trump Attorney 1 and Trump Attorney 2. Therefore, the government neither confirms nor denies the existence of any disputes regarding assertions of attorney-client privilege or attorney work product protection by any other witness in the documents case, and the Court should likewise refrain from confirming or denying the existence of such records. *See supra*, p. 9; *In re Press Application*, 687 F. Supp. 3d at 137, 140.

Regarding Trump Attorney 1 and Trump Attorney 2, the same principles discussed above regarding public government disclosures apply. Records from the dispute involving Trump Attorney 1 and Trump Attorney 2 can be released, but they must be redacted to prevent disclosing any matter occurring before the grand jury that has not been disclosed in public court filings. That includes the names of Trump Attorney 1 and Trump Attorney 2. Petitioner cites press reports relying on anonymous sources that name two attorneys purportedly involved in privilege disputes in the documents case. *See* Appl. 4. But the fact that the press has "surmise[d]" or "infer[red]" the purported identity of a grand jury witness involved in a privilege dispute is insufficient to support disclosure of that witness's identity. *In re Press Application*, 687 F. Supp. 3d at 137-38.

---

[7] Undersigned counsel has sought records from the proper channels within the Department of Justice. Counsel has obtained some of the records at issue, but not all of them. Counsel will request access to the remaining records from the Court, *ex parte* and under seal.

In addition, any discussion of the substance of any witness's grand jury testimony or the information sought from any witness must be redacted, to the extent it has not already been disclosed in public court filings. *See supra*, pp. 10-11; *Bartko*, 898 F.3d at 73.

As it happens, the public docket in the documents case already contains modestly redacted versions of then-Chief Judge Howell's opinion and orders resolving the dispute involving Trump Attorney 1 and Trump Attorney 2. *See* Mot. exs. 17-19, *Trump Documents Case* (May 21, 2024), ECF Nos. 566-8, 566-9, 566-10. Those redacted versions accord with the above legal principles. Release of any material redacted in those versions would reveal matters occurring before the grand jury that have not been publicly disclosed in a manner that lifts the protection of Rule 6(e). Accordingly, the Court should not release any additional material from then-Chief Judge Howell's opinion and orders.

The docket sheet and the orders denying stay motions have not yet been publicly released. To the extent the government does not have these materials already, the government will request from the Court *ex parte* access to these materials. The government will then submit proposed redactions to the Court, *ex parte* and under seal, in accordance with these legal principles.

IV. **Petitioner Has Waived any First Amendment Claim to the Materials, and any Such Claim Is Meritless**

Petitioner asserts a "First Amendment right of access" to the records he requests, Appl. 1, but his Application contains no further argument regarding the First Amendment. He has therefore waived any First Amendment argument. *See NetworkIP, LLC v. FCC*, 548 F.3d 116, 128 n.10 (D.C. Cir. 2008) (holding that a litigant "waived" arguments "[b]y failing to argue them in its opening briefs"); *In re Application of Politico*, 2024 WL 1739096, at *3 (finding that a journalist forfeited a claim of First Amendment access to judicial records by failing to raise it adequately in district court).

Any First Amendment claim would be meritless in any event. "'[T]here is no First Amendment right of access to grand jury proceedings,' nor do First Amendment protections extend to ancillary materials dealing with grand jury matters, such as" a judicial "opinion" addressing a dispute over grand jury subpoenas. *Miller II*, 493 F.3d at 154 (quoting *Dow Jones*, 142 F.3d at 499). Indeed, it is a "settled proposition" that "there is no First Amendment right of access to grand jury proceedings." *Dow Jones*, 142 F.3d at 499; *see also In re Press Application*, 687 F. Supp. 3d at 136 ("Rule 6(e)(6) displaces any First Amendment or common-law right of access to documents in ancillary proceedings").

## CONCLUSION

As described above, the Court should refrain from confirming or denying the existence of such records whose existence has not been confirmed in public court filings and should deny the Application to the extent it seeks such records. Certain records sought by Petitioner can be released in redacted form. The government requests an opportunity to submit proposed redactions to the Court *ex parte* and under seal.

Dated: May 5, 2025                                    Respectfully Submitted,

                                                    YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for the United States*

15