UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE GRAND JURY SUBPOENAS ████████████████

Case No. 22-gj-33 (BAH)

Chief Judge Beryl A. Howell

**UNDER SEAL**

**EX PARTE TO GOVERNMENT ONLY**

**MEMORANDUM OPINION**

Former president Donald J. Trump seeks to stay an ongoing grand jury investigation pending his appeal of this Court's Order and Memorandum Opinion, both issued on November 19, 2022 ("Nov. 2022 Order" and "Nov. 2022 Decision," respectively), ECF Nos. 12 and 13, granting the government's motion to compel the grand jury testimony from ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████. ████████████████████████████████████████████ ████████████ Upon review, the former president does not meet the high bar for the extraordinary relief that a stay confers. His motion is thus denied.

**I.  BACKGROUND**

A detailed enumeration of the factual and procedural history preceding this motion is described in the November 2022 Decision, at 2–14, and is thus incorporated by reference here.

Specific to this motion, on ████████████ the Court granted the government's motion to compel the grand jury testimony of ████████████ by sealed Order—disclosed to the parties and the witnesses—and issued with an accompanying Memorandum Opinion, ████████████████████████████████████████. *See* Nov. 2022 Order; Nov. 2022 Decision.

1

Pursuant to the Order, the government submitted proposed redactions to the Memorandum Opinion on ▮▮▮▮▮▮ to remove matters subject to Federal Rule of Criminal Procedure 6(e), due to the grand jury's ongoing investigation, ▮▮▮▮▮▮▮▮▮▮▮▮, which proposed redactions were approved by the Court and the redacted Memorandum Opinion ordered to be disclosed to the witnesses and the former president, *see* Min. Order (Nov. 22, 2022). The redacted version of the Memorandum Opinion was then disclosed by the government to the former president on November 28, 2022, in accordance with the Court's direction. *See* Memorandum Opinion (Witness Blackbox), ECF No. 15; Memorandum Opinion (Trump Blackbox), ECF No. 16.

Also, pursuant to the November 2022 Order and in furtherance of the grand jury's investigation, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and, according to the government, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The former president then filed the instant motion for stay pending appeal on December 7, 2022. ▮▮▮▮▮▮. The Court ordered the government to respond to the former president's request approximately one week later, by December 13, 2022, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* Scheduling Order (Dec. 8, 2022). The former president has chosen to file no reply and, as of the date of issuance of this Memorandum Opinion, the former president has yet to file a notice of appeal with this Court. *Cf.* FED. R. APP. P. 4(b)(1)(A)(i). Given the expiration of the Scheduling Order on briefing in this matter, the motion is now ripe for review.

2

## II. LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "'A stay is not a matter of right, even if irreparable injury might otherwise result,'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)), and "[a] stay pending appeal is always an extraordinary remedy," *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966).

Courts considering a stay request pending an appeal must "'weigh competing interests,'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55), by balancing the following factors as applied to the specific facts of the case: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies," *Nken*, 556 U.S. at 434 (internal citations omitted). The first and second factors are the "most critical" to determining whether a stay is warranted, *CREW v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) (citing *Nken*, 556 U.S. at 434), *aff'd*, *Crossroads Grassroots Policy Strategy v. CREW*, 139 S. Ct. 50 (2018) (Mem.), while the third and fourth factors "merge" when the stay applicant so moves against the government. *Nken*, 556 U.S. at 435. The party seeking the stay bears the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255. Like a preliminary injunction, absent a showing of a likelihood of success on the merits, "it would take a very strong

3

showing with respect to the other preliminary injunction factors to turn the tide in plaintiffs' favor." *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 366 (D.C. Cir. 1999).

### III. DISCUSSION

As disclosed by the government ▮▮▮▮▮▮▮▮▮▮, following the Order, ▮▮ ▮▮▮▮▮▮▮▮▮ testified before the grand jury on ▮▮▮▮▮▮▮▮, about communications they previously withheld under the former president's executive and attorney-client privilege instructions. ▮▮▮▮▮▮▮▮▮▮ That fact is fatal to the former president's motion. In the former president's words, "▮▮▮▮▮▮▮▮ will testify about privileged presidential communications regarding their advice to the President in discharging his official duties. This testimony, once elicited, forever voids the protections the privilege affords. The words cannot be returned to the mouths of the witnesses." ▮▮▮▮▮▮▮▮ The former president's motion to stay the Order and delay the witnesses' grand jury testimonies is thus moot. *See Off. of Thrift Supervision Dep't of Treasury v. Dobbs*, 931 F.2d 956, 957–58, 960 (D.C. Cir. 1991) (dismissing appeal of subpoena enforcement decision as moot because appellant had already complied with the subpoena in question and so "there is no live controversy before this Court"); *In re Grand Jury Proceedings (John Roe)*, 142 F.3d 1416, 1422 (11th Cir. 1998) (ruling that an appeal of the denial of a motion to quash a grand jury subpoena was moot because the witness had already testified before the grand jury).

Having acknowledged that the witnesses' testimonies would moot his motion, the former president offers no rebuttal or cause to consider exceptions to mootness. ▮▮▮▮▮▮▮▮ ("Additionally, should ▮▮▮▮▮▮▮ testify regarding these privileged communications, the Government will undoubtedly move to dismiss this appeal for mootness."). Mootness alone

4

suffices to deny the former president's stay request, but for good measure, the three factors for evaluating a stay request against the government's interests are considered in turn.[1]

The former president is unlikely to succeed on the merits for the reasons stated in the November 2022 Decision. As explained there, the communications to which ▮▮▮▮▮▮ ▮▮▮ testified were not matters of national security implicating the utmost protection as "core communications." *See* Nov. 2022 Decision at 21–22. The former president counters that he conferred with ▮▮▮▮▮▮▮▮▮▮ on issues that were, "at the time, national security secrets." ▮▮▮▮▮▮▮▮ The former president bestows that label far too loosely. None of the communications the government sought involved national security or classified—top secret, secret, or confidential—information per the designation of such according to Executive Order No. 13,526, the latest, and thus authoritative, order detailing a uniform system for classifying, protecting, and disclosing national security information. *See* 75 Fed. Reg. 707 (Dec. 29, 2009). Rather, the communications illustrate efforts by members of the Trump White House and campaign team, with other allies, to overturn a valid presidential election in favor of their preferred candidate—Donald J. Trump—and obstruct a Joint Session of Congress to further that end. The former president provides no evidence beyond bald allegations that the communications at issue involved election security rising to the level of risks to this nation's security.

---

[1] In opposition, the government argues that the former president's deadline to appeal the Order has lapsed under Federal Rule of Appellate Procedure 4. ▮▮▮▮▮▮▮▮▮▮ That position is not entirely clear, however. Under the Federal Rules of Appellate Procedure, in civil cases, the deadline to file a notice of appeal after entry of the judgment or order appealed from is 30 days or, if one of the parties in the case is the United States, 60 days. FED. R. APP. P. 4(a)(1)(A)–(B). On the other hand, in criminal cases, the deadline to file a notice of appeal is "14 days after the later of the entry of either the judgment or the order being appealed; or the filing of the government's notice of appeal." *Id.* at 4(b)(1)(A)(i)–(ii). Whether grand jury matters fall under subsection (a) or (b) of Rule 4 is an issue of first impression in this Circuit. *See In re Grand Jury*, 490 F.3d 978 (D.C. Cir. 2007) (holding that the deadline to appeal the denial of a motion to disclose a grand jury transcript to the testifying grand jury witness fell under Rule 4(a), not Rule 4(b)). Nonetheless, the former president fails to prove that any of the three factors to consider for a stay weigh in his favor, and so the Court denies his motion to stay and need not interpret Rule 4 in this context.

As also explained in the November 2022 Decision, the presidential communications privilege in this instance gives way to the specific need of the grand jury's ongoing criminal investigation into the events surrounding January 6, 2021. *See* Nov. 2022 Decision at 24–34. Both in its motion to compel ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, the government amply and thoroughly established that ▬▬▬▬▬▬▬▬ would each provide information important to the grand jury's investigation and unavailable with due diligence elsewhere. *See In re Sealed Case*, 121 F.3d 729, 754, 759–62 (D.C. Cir. 1997). Left with little else to challenge aside from relitigating points previously rejected in the November 2022 Decision, the former president raises—for the first time in his motion to stay—that "the areas of potential testimony identified in the Court's Order for ▬▬▬▬▬▬▬▬ closely track the categories of information sought from ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬" ▬▬▬▬▬▬▬▬ As a result, so goes the former president's argument, "any assertion that all witnesses have unique and important evidence as to each of these twelve discrete categories would strain credulity" and thus show that "the Government cannot demonstrate that the evidence is unavailable from other sources—including from the witnesses' testimony before the January 6th Select Committee." *Id.* at 9. That argument is meritless.

In his opposition to the government's motion to compel, the former president did not challenge that other witnesses' testimonies rendered the testimonies of ▬▬▬▬▬▬▬▬ repetitive and thereby unnecessary, despite the former president knowing that other witnesses were testifying before the grand jury and had testified before the House Select Committee to Investigate the January 6th Attack on the United States Capitol. The former president's failure to challenge the due diligence factor of the standard of need test renders it waived. *Shea v. Kerry*,

6

796 F.3d 42, 56 (D.C. Cir. 2015) ("[A]n argument never made below is waived on appeal." (internal citations omitted)).

That aside, as explained in the November 2022 Decision, the perspective and first-hand accounts of ▮▮▮▮▮▮▮ are primary and irreplaceable evidence. Multiple witnesses are necessary to understand and corroborate key events in a comprehensive criminal investigation. The witnesses also participated in one-on-one conversations with individuals, including the former president, making ▮▮▮▮▮▮▮ the only available witnesses to introduce this evidence to the grand jury—short of issuing a grand jury subpoena to the former president himself. *See* Nov. 2022 Decision at 33–34.

Finally, the former president's general dislike of *In re Lindsey* does not render it non-binding authority. *In re Lindsey* is the law of this Circuit and thus controls the outcome of this case as ▮▮▮▮▮▮▮ were self-proclaimed government attorneys and not personal counsel to the former president. *See* Nov. 2022 Decision at 38 & nn.26–27. The former president cites two out-of-circuit cases to argue that "the District of Columbia Circuit can follow the approach" of these circuits, ▮▮▮▮▮▮▮, which both allowed government attorneys to invoke attorney-client privilege to shield from disclosure in criminal investigations conversations between a governor and his office's chief legal counsel, *see In re Grand Jury Investigation*, 399 F.3d 527, 533–36 (2d Cir. 2005), and between the staff and legal counsel of a state government's department of labor and training, *In re Grand Jury Subpoena*, 909 F.3d 26, 30–32 (1st Cir. 2018). That suggested "approach" is contrary to the law-of-the-circuit doctrine. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir.) (en banc) ("Inconsistency is the antithesis of the rule of law. For judges, the most basic principle of jurisprudence is that we must act alike in all cases of like nature. . . . [T]he law-of-the-circuit doctrine [states that] the *same issue* presented in a *later*

7

*case* in the *same court* should lead to the *same result*." (internal citations omitted and formatting in original)).

In sum, the former president offers no reason to deem his success on the merits of a, so far, non-existent appeal likely, or even plausible. This factor thus weighs against the former president's stay request.

The former president's claim of irreparable injury is similarly unconvincing given the mootness of the instant motion. *See supra* at 4–5. The harm the former president seeks to prevent through a stay has already occurred with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even so, the former president did not act as if the risk of irreparable injury was real or impending. He waited 18 days from issuance of the Order he seeks to appeal to file his motion for stay, and he still has yet to file a notice of appeal. Both choices undermine the former president's contention now that irreparable injury supports a stay.[2]

Finally, the interests of the government, the witnesses, and the public weigh against a stay. Grand jury investigations are constitutionally protected with a "broad" authority to "inquire into all information that might possibly bear on its investigation." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991); U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."). The testimonies of the witnesses are relevant, important, and integral to the grand jury's ongoing criminal investigation. *See* Nov. 2022 Decision at 24–34; *see also In re Sealed Case*, 121 F.3d at

---

[2] To support his irreparable harm argument, the former president cites an order issued by the D.C. Circuit in *Republican National Committee v. Pelosi*, No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022), which vacated the district court's decision to uphold a subpoena issued by the House Select Committee to Investigate the January 6th Attack on the United States Capitol because the Committee voluntarily withdrew the subpoena under review and stated that it will not renew the subpoena. *Id.* at *1. This case is wholly inapposite, making the former president's reason for reliance on it entirely unclear, since the case neither supports his position nor is factually analogous. Put bluntly, this case is unpersuasive authority.

8

754–55. The former president's motion for stay is yet another conspicuous attempt to delay that investigation, which clear legal precedent counsels against tolerating. *Cf. R. Enters., Inc.*, 498 U.S. at 298–99 ("We have expressly stated that grand jury proceedings should be free of [procedural] delays" and "detours" that "'would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws.'" (quoting *United States v. Dionisio*, 410 U.S. 1, 17 (1973))); *Gomez v. U.S. Dist. Ct. for N.D. Cal.*, 503 U.S. 653, 654 (1992) ("A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief," particularly when "last-minute attempts to manipulate the judicial process" via a stay application, ripe "more than a decade ago," amount to "abusive delay" without good cause).

As context, the grand jury served its subpoenas on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇. *See* Nov. 2022 Decision at 10. Their initial grand jury testimonies ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ withholding answers to numerous questions on the former president's instruction to invoke the presidential communications privilege and attorney-client privilege. *See id.* at 13. The Court resolved the government's motion to compel the withheld testimonies on November 19, 2022, and so the grand jury's investigation has been stalled by almost three months given the former president's invocation of privilege ▇▇▇▇ of the witnesses' testimonies.

The Court thus declines to further pause the grand jury's constitutionally protected work, particularly in the absence of any reassurance that the former president's delay tactics will cease.

IV.   CONCLUSION

Based on the foregoing analysis, the former president's motion to stay the November 2022 Order and Decision pending appeal is DENIED.

Date: December 18, 2022

9

BERYL A. HOWELL
Chief Judge