UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE GRAND JURY SUBPOENA

███████

Case No. 22-gj-39 (BAH)

Chief Judge Beryl A. Howell

**UNDER SEAL**

**EX PARTE TO GOVERNMENT ONLY**

**MEMORANDUM OPINION**

On ███████, a grand jury sitting in this District issued a subpoena to ███ ███████████████████████████████████████████ ███████████████████████████████████, regarding possible violations of federal law. *See* December 9, 2022 Decision ("Dec. 2022 Decision") at 11, ECF No. 15. Although ███████ promptly contacted the former president, ███████████ to inquire whether the latter planned to assert any privilege over ███████ testimony, and was assured by counsel to the former president that instructions on privilege assertions would follow "well in advance" of ███████ *id.* at 12, quite the opposite occurred. After multiple, unsuccessful follow-up requests from ███████ for any privilege instruction, the former president waited until *two days before* ███████ scheduled grand jury testimony to direct him to invoke executive and attorney-client privileges on the former president's behalf. *Id.* at 12–14. The government subsequently filed a motion to compel ███████ testimony, ███ ███████████████████████████████████ which the Court granted on December 9, 2022, over ███████ the originally scheduled date for ███████ appearance before the grand jury, *see* December 9, 2022 Order ("Dec. 2022 Order"), ECF No. 14; Dec. 2022 Decision.

1

The instant motion to stay that December Order follows the former president's routine tactic of waiting until the last minute to bring claims before this Court. The former president waited fourteen days after the December 2022 Order issued to seek a stay without mention of a request for expeditious consideration. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Contrary to his characterization that the government "race[d] to moot the appeal" by putting ▮▮▮▮ before the grand jury in compliance with the December 2022 Order, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—almost ▮▮▮▮ after the Order issued, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The former president's strategy of waiting until the last minute to respond—a pattern forcing delay in the progress of a grand jury investigation—simply did not work here. With the record thusly set straight, the former president's inability to meet the high bar for a stay means that his motion must be denied.

**I. BACKGROUND**

A detailed enumeration of the factual and procedural history preceding this motion is described in the December 2022 Decision, at 1–16, and is thus incorporated by reference here.

Specific to this motion, on December 9, 2022, the Court granted the government's motion to compel the grand jury testimony of ▮▮▮▮ by sealed Order, which was disclosed to the parties and the witness, with the Order's accompanying Memorandum Opinion disclosed *ex parte* to the government. *See* Dec. 2022 Order; Dec. 2022 Decision. Pursuant to the Order, the government submitted proposed redactions to the Memorandum Opinion on December 12, 2022, to remove matters subject to Federal Rule of Criminal Procedure 6(e), due to the grand jury's ongoing investigation, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which

2

proposed redactions were approved by the Court that day and the redacted Memorandum Opinion ordered to be disclosed to the witness and the former president, *see* Min. Order (Dec. 12, 2022). The redacted version of the Memorandum Opinion was then disclosed by the government to the former president later that day, in accordance with the Court's direction. *See* Redacted Document Memorandum Opinion - Trump Blackbox, ECF No. 17; Redacted Document Memorandum Opinion - Witness Blackbox, ECF No. 18.

Also, pursuant to the December 2022 Order and in furtherance of the grand jury's investigation, ███████████████████████████████████████, and, according to the government, ███████████████████████████████████████████████████ ██████████████████████████████████████.

The former president subsequently filed the instant motion for stay pending appeal on December 23, 2022. ████████████ The Court ordered the government to respond to the former president's request by January 3, 2023, ██████████████████████████████ ██████████████████████████████████, and the former president to reply by January 9, 2023, ██████████████████████████████████. Both the government and the former president timely filed their positions, and the motion for a stay is now ripe for review.

## II. LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "'A stay is not a matter of right, even if irreparable injury might otherwise result,'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)), and "[a] stay

3

pending appeal is always an extraordinary remedy," *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966).

Courts considering a stay request pending an appeal must "'weigh competing interests,'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55), by balancing the following factors as applied to the specific facts of the case: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies," *Nken*, 556 U.S. at 434 (internal citation omitted). The first and second factors are the "most critical" to determining whether a stay is warranted, *CREW v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) (citing *Nken*, 556 U.S. at 434), *aff'd*, *Crossroads Grassroots Policy Strategy v. CREW*, 139 S. Ct. 50 (2018) (Mem.), while the third and fourth factors "merge" when the stay applicant so moves against the government, *Nken*, 556 U.S. at 435. An appeal that "shows little prospect of success" on the first factor is "arguably [a] fatal flaw for a stay application." *CREW*, 904 F.3d at 1019. The party seeking the stay bears the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

### III. DISCUSSION

As disclosed by the government ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ That fact is fatal to the former president's motion for a stay. In the former president's words, "██████████ will testify about privileged

4

presidential communications" and "[t]his testimony, once elicited, forever voids the protections the privilege affords. The words cannot be returned to the mouth[] of the witness[]." ▇▇▇▇▇ ▇▇▇▇▇ The former president's motion to stay the Order and delay the witness's grand jury testimony is thus moot. *See Off. of Thrift Supervision Dep't of Treasury v. Dobbs*, 931 F.2d 956, 957–58, 960 (D.C. Cir. 1991) (dismissing appeal of subpoena enforcement decision as moot because appellant had already complied with the subpoena in question by giving deposition testimony and so "there is no live controversy before this Court"); *In re Grand Jury Proceedings (John Roe)*, 142 F.3d 1416, 1422 (11th Cir. 1998) (ruling that an appeal of the denial of a motion to quash a grand jury subpoena was moot because the witness had already testified before the grand jury).[1] Consequently, mootness alone suffices to deny the former president's stay request, but for good measure, the three factors for evaluating a stay request against the government's interests are considered in turn.

Moreover, the former president is unlikely to succeed on the merits for the reasons stated in the December 2022 Decision. As explained there, the communications to which ▇▇▇▇▇ will testify were not matters of national security implicating the utmost protection as "core communications." *See* Dec. 2022 Decision at 21–23. Notwithstanding this holding, the former president reiterates, in support of a stay, his characterization that he conferred with ▇▇▇▇▇ on issues that were, "at the time, national security secrets." ▇▇▇▇▇ The former president bestows that label far too loosely. None of the communications the government sought to elicit testimony before the grand jury involved national security, let alone classified—top

---

[1] To evade mootness, the former president counters that the government could still use ▇▇▇▇▇ testimony "as the basis for a still unissued indictment or in any criminal proceeding" and because "a partial remedy" is available, such as "a curative instruction to the grand jury regarding the privilege of testimony" or a "future-use injunction." ▇▇▇▇▇ The D.C. Circuit flatly rejected that position in *Office of Thrift Supervision Dept. of Treasury v. Dobbs*: "[A] party cannot retrieve testimony once it is given; the party can only ask that the testimony be sealed against future use. In that event, such a challenge would be ripe only at the time when that future use is a real, not a speculative, possibility." 931 F.2d at 959.

5

secret, secret, or confidential—information per the designation of such according to Executive Order No. 13,526, which is the latest, and thus authoritative, order detailing a uniform system for classifying, protecting, and disclosing national security information. *See* 75 Fed. Reg. 707 (Dec. 29, 2009). Rather, the communications describe efforts by members of the Trump White House and campaign team, with other allies, to overturn a valid presidential election in favor of their preferred candidate—Donald J. Trump—and obstruct a Joint Session of Congress to further that end.[2] The former president provides no evidence beyond bald allegations that the communications at issue involved election security rising to the level of risks to this nation's security.[3]

As also explained in the December 2022 Decision, the presidential communications privilege in this instance gives way to the specific need of the grand jury's ongoing criminal investigation into the events surrounding January 6, 2021. *See* Dec. 2022 Decision at 24–35. Both in its motion to compel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the government amply and thoroughly established that ▮▮▮▮▮▮▮▮ would provide information

---

[2] The former president's attempt to use the fact that redactions of certain "public events" in the December 2022 Decision must mean that the discussion concerned highly confidential communications is divorced from the context and therefore misguided. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The "public" events discussed in the December 2022 Decision are described in such a way that details of the grand jury's ongoing investigation are revealed, requiring redaction and withholding from the former president and the witness. Nevertheless, the former president knows that the "public events" concern the efforts to overturn the results of the 2020 presidential election, including during the process of certification of the Electoral College votes at the January 6, 2021, Joint Session of Congress. *See, e.g.*, Donald J. Trump, Rally on Electoral College Vote Certification at 3:33:05–3:33:10, 3:33:32–3:33:54, 3:37:19–3:37:29, C-SPAN (Jan. 6, 2021), https://www.c-span.org/video/?507744-1/rally-electoral-college-vote-certification (last accessed Jan. 10, 2023).

[3] In a belated effort to bolster his description ▮▮▮▮▮▮▮▮ testimony as concerning "national security secrets," in reply, the former president cites Executive Order 13,848, in which then-President Trump declared a national emergency pursuant to the International Emergency Economic Powers Act to address the threat of foreign interference in or undermining of public confidence in United States elections, ▮▮▮▮▮▮▮▮▮▮▮▮ (citing 83 Fed. Reg. 46,843 (Sept. 12, 2018)), and President Biden's continuation of that order, ▮▮▮▮ (citing 87 Fed. Reg. 55,681 (Sept. 7, 2022)). Of note, nowhere in his opposition to the underlying motion to compel did the former president invoke either order. Nonetheless, the orders do not change the analysis because the government sought testimony from ▮▮▮▮▮▮▮▮ regarding attempts by members of the White House to overturn a valid presidential election, despite the lack of any outcome-determinative election fraud evidence originating either domestically or from abroad. Yet again, the former president's attempt to shoehorn those actions into the broad category of election security or national security secrets is unpersuasive.

6

important to the grand jury's investigation and unavailable with due diligence elsewhere. *See In re Sealed Case*, 121 F.3d 729, 754, 759–62 (D.C. Cir. 1997).

As he did in opposing the government's motion to compel, the former president again challenges the availability of alternative evidence, contending that "the areas of potential testimony identified in the Court's Order closely track the categories of information sought from numerous other witnesses." ███████████ As a result, the former president reasons, "the idea that ███████ possesses 'unique and inimitable' information with respect to each of these ████ discrete categories strains credulity," █ (quoting Dec. 2022 Decision at 34), and thus shows that "the Government cannot demonstrate that the evidence is unavailable from other sources—including from ████████████████ before the January 6th Select Committee," █ For the reasons already explained in the December 2022 Decision, that argument is meritless.[4]

████████ perspective and first-hand account is primary and irreplaceable evidence. Multiple witnesses are necessary to understand and corroborate key events in a comprehensive criminal investigation. ████████████████████████████████████████████████████████████████████████████████ the only available witness to introduce this evidence to the grand jury—short of issuing a grand jury subpoena to the other individuals, including the former president himself. *See* Dec. 2022 Decision at 33–35.

---

[4] Additionally, in opposing the government's motion to compel, the former president did not assert that other ████████████ before the House Select Committee to Investigate the January 6th Attack on the United States Capitol rendered ██████████ testimony repetitive and thereby unnecessary, despite the former president's knowledge months ago of the House Select Committee's work. As such, that aspect of his argument is waived. *Shea v. Kerry*, 796 F.3d 42, 56 (D.C. Cir. 2015) ("[A]n argument never made below is waived on appeal." (internal citation omitted)). Moreover, as the government points out, the "argument that the Government must rely on the Select Committee's transcripts ██████████████████ . . . implies that the witnesses were permitted to testify there on matters the former President now seeks to shield from the grand jury on the basis of executive privilege," when such permission, once granted, would make "any assertion of executive privilege before the grand jury . . . a nullity." ████████████████ The former president's presentation of this argument in opposing a motion to compel based on privilege assertions is indeed puzzling when the obvious counterpoint is that all privileges have been waived because of witnesses' prior disclosures to the House Select Committee. In any event, this argument need not be addressed given that it is waived.

Finally, merely because the former president dislikes and disputes the holding in *In re Lindsey* does not render this decision non-binding authority. *In re Lindsey* is the law of this Circuit and thus controls the outcome of the former president's assertion of attorney-client privilege as to ▓▓▓▓ testimony before the grand jury. ▓▓▓▓ was a government attorney and not personal counsel to the former president. *See* Dec. 2022 Decision at 38. The former president cites two out-of-circuit cases to argue that "the District of Columbia Circuit can follow the approach" of these circuits, Resp't's Mot. at 9, which both allowed government attorneys to invoke attorney-client privilege to shield from disclosure in criminal investigations conversations between a governor and his office's chief legal counsel, *see In re Grand Jury Investigation*, 399 F.3d 527, 533–36 (2d Cir. 2005), and between the staff and legal counsel of a state government's department of labor and training, *In re Grand Jury Subpoena*, 909 F.3d 26, 30–32 (1st Cir. 2018). That suggested "approach" is contrary to the law-of-the-circuit doctrine. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir.) (en banc) ("Inconsistency is the antithesis of the rule of law. For judges, the most basic principle of jurisprudence is that we must act alike in all cases of like nature. . . . [T]he law-of-the-circuit doctrine [states that] the *same issue* presented in a *later case* in the *same court* should lead to the *same result*." (internal citations omitted and formatting in original)).

In sum, the former president offers no reason to deem his success on the merits likely, or even plausible. This factor thus weighs against the former president's stay request.

The former president's claim of irreparable injury is similarly unconvincing given the mootness of the instant motion. ▓▓▓▓ The harm the former president seeks to prevent through a stay has already occurred with ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Even so, the former president did not act as if the risk of irreparable injury was real or impending. He waited 14 days from issuance of the

8

Order he seeks to appeal to file his motion for stay and, as of issuance of this opinion, did not seek emergency relief or expedition before this Court or the Circuit. *See, e.g.*, D.C. Cir. R. 2 ("In the interest of expediting decisions or for other good cause, the court may suspend the requirements of these Circuit Rules."); D.C. Cir. R. 27(f) ("Any party may request expedited action on a motion on the ground that, to avoid irreparable harm, relief is needed in less time than would ordinarily be required for this court to receive and consider a response. . . . The motion must be filed at least 7 days before the date by which court action is necessary or counsel must explain why it was not so filed."). Both choices undermine the former president's contention that irreparable injury supports a stay.[5]

Finally, the interests of the government, the witness, and the public weigh against a stay. Grand jury investigations are constitutionally protected with a "broad" authority to "inquire into all information that might possibly bear on its investigation." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991); U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."). ▮▮▮▮▮ testimony is relevant, important, and integral to the grand jury's ongoing criminal investigation. *See* Dec. 2022 Decision at 24–35; *see also In re Sealed Case*, 121 F.3d at 754–55. The former president's motion for a stay is yet another conspicuous attempt to delay that investigation, which clear legal precedent counsels against tolerating. *Cf. R. Enters., Inc.*, 498 U.S. at 298–99 ("We have expressly stated that grand jury proceedings should be free of [procedural] delays" and "detours" that "'would assuredly impede its investigation and frustrate

---

[5] To support his irreparable harm argument, *see* Resp't's Mot. at 12, the former president cites an order issued by the D.C. Circuit in *Republican National Committee v. Pelosi*, No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022), vacating the district court's decision to uphold a subpoena issued by the House Select Committee to Investigate the January 6th Attack on the United States Capitol because the Committee voluntarily withdrew the subpoena under review and stated that it will not renew the subpoena. *Id.* at *1. This case is wholly inapposite, making the former president's reason for reliance on it entirely unclear, since the case neither supports his position nor is factually analogous. Put bluntly, this case is unpersuasive authority.

9

the public's interest in the fair and expeditious administration of the criminal laws.'" (quoting *United States v. Dionisio*, 410 U.S. 1, 17 (1973))); *Gomez v. U.S. Dist. Ct. for N.D. Cal.*, 503 U.S. 653, 654 (1992) ("A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief," particularly when "last-minute attempts to manipulate the judicial process" via a stay application, ripe "more than a decade ago," amount to "abusive delay" without good cause).

As context, the grand jury served its subpoena on ▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Dec. 2022 Decision at 11. His grand jury testimony was scheduled ▮▮▮▮▮▮▮, but was postponed by the government upon learning of the witness's intention to withhold testimony under the former president's privilege invocation. ▮▮▮ The Court resolved the government's motion to compel ▮▮▮▮ testimony ▮▮▮▮▮▮▮, and so the grand jury's investigation has been stalled by almost 4 months given the former president's invocation of privilege on the eve of the witness's testimony.

The Court thus declines to pause further the grand jury's constitutionally protected work, particularly in the absence of any reassurance that the former president's delay tactics will cease.

IV. CONCLUSION

Based on the foregoing analysis, the former president's motion to stay the December 2022 Order and Decision pending appeal is DENIED. An order consistent with this Memorandum Opinion will be issued contemporaneously.

Date: January 10, 2023

*Beryl A. Howell*
BERYL A. HOWELL
Chief Judge

10