* * * * * **SEALED** * * * * *

* <u>**THIS PAGE LEFT INTENTIONALLY BLANK**</u> *

<u>**SEALED MATTER ENCLOSED**</u>

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

* * * * * * * * * * * * * *

| | | |
|---|---|---|
| In re Grand Jury subpoenas: | ) | Grand Jury Matter |
| ███████████████ | ) | No. 22-25 |
| | ) | |
| | ) | |
| United States of America | ) | September 22, 2022 |
| interested party: | ) | 1:02 p.m. |
| Donald J. Trump | ) | Washington, D.C. |
| | ) | |

* * * * * * * * * * * * * * *

**TRANSCRIPT OF HEARING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

<u>APPEARANCES</u>:

FOR THE UNITED STATES:
            JOHN PELLETTIERI
            THOMAS WINDOM
            AMANDA VAUGHN
            Assistant United States Attorneys
            601 D Street Northwest
            Washington, D.C.

FOR DONALD J. TRUMP:
            TIMOTHY PARLATORE
            One World Trade Center
            New York, NY  10007
            (212) 603-9918

            M. EVAN CORCORAN
            400 E. Pratt Street, Suite 900
            Baltimore, Maryland
            (410) 385-2225
            Email: ███████████████████████

            JOHN ROWLEY
            1701 Pennsylvania Avenue NW, Suite 200
            Washington , DC 20006
            (202) 525-6674
            Email: ██████████████████████

Court Reporter:   Elizabeth Saint-Loth, RPR, FCRR

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

1                    **P R O C E E D I N G S**

2                THE COURT:  Matter before the Court, Grand Jury

3       matter 22-25, in reference to GJ Subpoena Nos. ██████████

4       and GJ ████████████ .

5                Interested parties are United States of America

6       and Donald J. Trump.

7                Counsel, please come forward and state your names

8       for the record.

9                MR. WINDOM:  Good afternoon, Your Honor.

10      Thomas Windom, John Pellettieri, and Amanda Vaughn for the

11      United States.

12               THE COURT:  All right.  Good afternoon,

13      Mr. Windom.

14               MR. PARLATORE:  Good afternoon, Your Honor.

15      Timothy Parlatore, along with John Rowley and Evan --

16               THE COURT:  Timothy --

17               MR. PARLATORE:  Parlatore.

18               THE COURT:  Parlatore?

19               MR. PARLATORE:  Yes.

20               THE COURT:  All right.  That's a new name.

21               And also?

22               MR. PARLATORE:  John Rowley and Evan Corcoran.

23               THE COURT:  Mr. Corcoran, who I have seen before.

24               Are you going to be arguing today, Mr. Parlatore?

25               MR. PARLATORE:  Yes, Your Honor.  I will.

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

1          THE COURT:  Okay.  Good.  All right.

2          So -- and everybody else sitting in the audience

3     is okay for a sealed hearing?

4          I know Ms. Dohrmann.

5          But everybody else is fine?

6          MR. WINDOM:  On the government's side, Your Honor,

7     it's Mary Dohrmann, John Crabb, and J.P. Cooney for the

8     United States.

9          THE COURT:  I'm sorry.  Through my plexiglas,

10    Mr. Crabb -- I'm sorry.  The plexiglas gets a little cloudy

11    when I am looking that far back.

12         All right.  Well, this is the government's motion

13    to compel, so I will hear first from the government.

14         Could you just remind me what your name is?

15         MR. PELLETTIERI:  Thank you, Your Honor.

16         John Pellettieri for the United States.

17         THE COURT:  Pellettieri, okay.

18         MR. PELLETTIERI:  The grand jury is entitled

19    to the testimony of --

20         THE COURT:  Okay.  I have read all of the papers.

21         Let me just ask you questions --

22         MR. PELLETTIERI:  Absolutely.

23         THE COURT:  You don't have to put on a show for

24    everybody here.

25         MR. PELLETTIERI:  Glad to.

* * * * * SEALED * * * * *

*  *  *  *  *  SEALED  *  *  *  *  *

1    THE COURT:  So I just want to begin with the types

2    of communications that fall under this shield of executive

3    privilege which -- in the D.C. Circuit case law, and I think

4    more broadly -- is considered to include deliberative

5    process privilege, the presidential communications

6    privilege.

7        And I fully appreciate that the government has

8    just said assume these are privileged, you know, to move

9    forward; don't bother your little head about what is and

10   isn't, just assume it's all privileged.

11       But I think it will be very helpful to understand

12   where the parties agree about what executive privilege

13   actually covers and what's at issue here.

14       So although executive privilege generally covers

15   both deliberative process privilege, which we usually see in

16   the FOIA context in this court on an almost daily basis, the

17   privilege -- the executive privilege species, basically to

18   quote a D.C. Circuit case which calls it subspecies, species

19   of executive privilege -- is the presidential communications

20   privilege -- that's the only privilege that's at issue here.

21       So even though we talk broadly about "executive

22   privilege," we're really just talking about the presidential

23   communications privilege; is that right?

24       MR. PELLETTIERI:  That's correct, Your Honor.

25       THE COURT:  All right.  And if you all --

* * * * * SEALED * * * * *

1    Mr. Parlatore, just listen to this because I want to get on

2    the record what we're agreeing on here before we talk about

3    what is in dispute.  I just want to make sure we're not

4    talking past each other -- particularly me -- I am not

5    talking past anybody.

6         The parties' briefing doesn't go into detail at

7    all about what is covered by the presidential communications

8    privilege -- again, because I am just going to assume that

9    the testimony that the government is seeking to compel from

10   ████████████████████ is privileged.  But I want to make

11   sure we're all defining "presidential communications

12   privilege" the same way.

13        So just to cut through this, by my reading of the

14   law, the privilege is intended to preserve the president's

15   ability to obtain candid and informed opinions from his

16   advisors and to make decisions confidentially so that the

17   presidential communications privilege protects only

18   communications that satisfy the following two prongs:

19   Communications directly involving and documents actually

20   viewed by the President, as well as documents solicited and

21   received by the President or his immediate White House

22   advisors, and those advisors have to have broad and

23   significant responsibility for investigating and formulating

24   the advice to be given to the president.  So that's prong

25   one.

* * * * * SEALED * * * * *

1         Prong two is the communications have to reflect

2    presidential decisionmaking and deliberations; and I

3    understand that to mean:  Communications in performance of a

4    president's responsibilities of his office or made in the

5    process of shaping policies and making decisions.

6         Are there any additional prerequisites, or that

7    pretty much what the government views the presidential

8    communications privilege to encompass?

9         MR. PELLETTIERI:  Yes, Your Honor.  I think that

10    accurately reflects the governing precedent.

11         THE COURT:  Okay.  So, now, as I read the case law

12    on this, the courts have further looked at the types of

13    information subject to the presidential communications

14    privilege and identified certain types of information as the

15    core types of information covered by the presidential

16    communications privilege; and as "core" it means they're

17    entitled to the very most deference in shielding them from

18    disclosure.  And those core types of information are those

19    that protect military, diplomatic, or sensitive national

20    security interests.

21         Do you agree, though, that the privilege covers

22    more than just those core types of confidential information?

23         MR. PELLETTIERI:  Yes.  And I think that's the

24    teaching of Nixon where the Court said there could be a

25    generalized claim of executive privilege or presidential

* * * * * SEALED * * * * *

1    communications privilege; and then, when there is that type

2    of generalized assertion, the two-part standard that the

3    Court set forth there and that the D.C. Circuit elucidated

4    more *In re Sealed Case*, the *Espy* case would apply.

5           THE COURT:  Okay.  So now I'm going to get to the

6    list of ▌ topics that are in the cover letter to the grand

7    jury subpoenas to ███████████ and to █████████.

8           As I look through those ▌ topics, none of them

9    appear to relate to military, diplomatic, or sensitive

10   national security interest, so they're not -- none of the

11   information that the government is seeking to question these

12   witnesses about deal with these core types of communications

13   entitled to the most deference for the cloaking of the

14   privilege, is that -- do you agree?

15          MR. PELLETTIERI:  That's correct, Your Honor.

16          THE COURT:  Okay.  So these are topics, in these

17   subpoenas that -- these ▌ topics relate to more general

18   federal -- or do you think that they relate to more general

19   confidential federal government policy matters, or do they

20   do that even?

21          MR. PELLETTIERI:  I think the way we have phrased

22   it is that it's likely that many -- if not all -- of the

23   communications at issue would not be presidential

24   communications.

25          THE COURT:  I have read the cover letter, I have

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

1    seen that.  So I want to know -- I look at these ▮ topics

2    and they don't -- they don't -- they're certainly not core.

3            MR. PELLETTIERI:  Yes.

4            THE COURT:  But the government itself has said

5    that they may potentially implicate executive privilege.  So

6    what of these ▮ topics -- and why do you think they

7    implicate the presidential communications privilege?

8            MR. PELLETTIERI:  Your Honor, we think they likely

9    don't.  But what we don't want -- what we're trying to do --

10   the approach we propose here would be to short-circuit

11   collateral litigation on issues like this to assume the most

12   demanding standard possible, which is under the assumption

13   that the former President has made a valid assertion of

14   executive privilege over presidential communications and

15   that that assertion stands on the same footing as that of a

16   sitting President.  And under that assumption --

17           THE COURT:  And I appreciate that.

18           But if the communications at issue here, in these

19   ▮ topics, involve topics on matters other than the core

20   confidential types of communications that are entitled to

21   the most deference in being shielded by the privilege,

22   shouldn't that be some factor or consideration in evaluating

23   the need for the grand jury's -- evaluating the grand jury's

24   need for the information in the face of the assertion of the

25   privilege?

* * * * * SEALED * * * * *

* * * * * **SEALED** * * * * *

1    MR. PELLETTIERI:  Well, I think, Your Honor --

2    maybe there are three categories.  There is what you call

3    the "core" type of communications, national security.  There

4    is the more generalized communications that still qualifies

5    presidential communications, which Nixon talked about; and

6    then there are communications that fall outside the

7    presidential responsibility that are not entitled to any

8    kind of executive privilege.

9        This case does not -- I think it's undisputed that

10   this case does not at all implicate national security or any

11   of those types of communications --

12   THE COURT:  Any of the core, most critical types

13   of information entitled to the most deference for --

14   MR. PELLETTIERI:  Correct.

15   THE COURT:  -- under the presidential

16   communications privilege?

17   MR. PELLETTIERI:  I think that the only dispute

18   between the parties would be -- or the interested parties

19   would be that whether the communications here are within

20   that more generalized category or totally outside --

21   THE COURT:  But I want to understand what the

22   lines are -- a little bit more what the party's thinking is

23   about those lines -- because, clearly, things having to do

24   with decisionmaking by the President about, you know,

25   federal policy issues would fall on the side of the

* * * * * **SEALED** * * * * *

1    privilege line.

2              MR. PELLETTIERI:  Correct.

3              THE COURT:  The Circuit has been pretty clear that

4    political issues -- political decisions by a President fall

5    on the other side of the line; they are not covered by the

6    presidential communications privilege.

7              Do you read *In re Sealed Case* the same way?

8              MR. PELLETTIERI:  That's our understanding as

9    well, Your Honor.

10             THE COURT:  Okay.  Clearly what the President

11   orders for lunch -- what kind of sandwich he orders -- not

12   covered by the presidential communications privilege, right?

13             MR. PELLETTIERI:  Correct, Your Honor.

14             THE COURT:  So I am looking at the ███ topics and

15   wondering -- none of them are core, I think, in the

16   government's view.  And certainly ████████████████

17   ████████████████████████████████████████████████████████

18   ██████  would that fall on the line of politics or would that

19   be somewhat maybe -- maybe that would be something national

20   security related?  What's your view on that?

21             MR. PELLETTIERI:  Well, not national security

22   related, Your Honor.  In the abstract, depending on what the

23   communications could be, it could fall under one line or the

24   order.

25             But I think what we would like to stress is that

* * * * * **SEALED** * * * * *

1    the interest here is in the grand jury being able to

2    expeditiously conduct its investigation here, to get the

3    information it's entitled to, to follow the leads where they

4    lead, and to -- and to do what its responsibility is, to

5    decide whether a crime has or has not occurred.

6           And so our overarching interest is getting the

7    information that the grand jury is entitled to as quickly as

8    possible.  And in our view, the best way of doing that is to

9    assume -- just for purposes of this motion -- that all of

10   these communications are governed by the executive

11   privilege, the presidential communications privilege.  For

12   the reasons we've set forth in our *ex parte* submission, we

13   believe that we have met the two-part showing in the *Espy*

14   case and that we'll get the information to the grand jury so

15   that it can conduct its investigation, rather than going

16   down other areas of inquiry that could just lead to, in our

17   view, unnecessary litigation and delay the grand jury

18   conducting its constitutionally prescribed responsibilities.

19           THE COURT:  Well, the government -- I know you are

20   just saying just assume it's all subject to the presidential

21   communications privilege.  But, at the same time, the

22   government is somewhat critical that the former President's

23   assertion of privilege lacks sufficient specificity, and

24   so -- in saying that it's, at best, vague and boundless;

25   fails to meet its burden of articulating some compelling

* * * * * *SEALED* * * * * *

1    explanation for nondisclosure to overcome the countervailing

2    considerations -- at the same time the government is just

3    asking me to presume that they're all privileged.

4              MR. PELLETTIERI:  Well, Your Honor --

5              THE COURT:  So what am I supposed to make of those

6    arguments?

7              Am I supposed to -- I am going to follow the

8    government's, you know, suggestion, I just presume -- I

9    think it's -- I am required to.  You know, in the *Nixon* case

10   you have to presume the former President's entitled to a

11   presumption that there is -- the communications are -- in

12   which he was involved are presumptively privileged.

13             But in looking at the government's arguments about

14   lack of specificity and the assertion of the privilege --

15   which I agree with you wasn't particularly specific, but I

16   am not sure that the President has to be any more specific

17   because he's entitled to a presumption of privilege.

18             Is the government's point that at some point the

19   burden shifts to the President to be more specific?  And, if

20   so, at what point?

21             MR. PELLETTIERI:  Our point is that the privilege

22   is not possessed by the witness, and making a vague kind of

23   categorical assertion of privilege and then delegating what

24   may or may not fall on either side to the witness is

25   inconsistent with that principle of law.  We -- you know,

* * * * * SEALED * * * * *

1   but we felt it was important to set forth what we view as

2   sort of --

3          THE COURT:  I know you had that fancy little

4   chart -- some of them said this, some of them said that --

5   so you may not be applying the privilege the same way

6   because it's so vague in its assertion; I get all of that.

7          But I am trying to figure out what am I supposed

8   to make of that when I am presuming everything is privileged

9   anyway?

10          MR. PELLETTIERI:  You don't have to make anything

11   of it if that is troubling you, Your Honor.

12          We would ask you -- and invite you -- to rule on

13   the assumption that the former President has adequately

14   asserted executive privilege here; and that's consistent

15   with what the Supreme Court said in *Thompson* -- the *Thompson*

16   case where it denied cert.  And in its denial it said the

17   D.C. Circuit didn't have to get into this other stuff

18   because the former President's claim failed under even the

19   most demanding standard, and that's the path we're asking

20   you to follow here.  We think it's the cleanest.  We think

21   it's based on established precedent; it's clear precedent.

22   It is binding authoritative precedent --

23          THE COURT:  Without getting into the debate that

24   the Circuit sort of went into; and that's what the Supreme

25   Court said was in dicta, which is -- the current President

1    calls the privilege -- whether it applies or not -- it's not

2    a former President privilege, it's a current President

3    privilege.  I think that's what they said was dicta and, I

4    think, possibly with good reason, but...

5           So let me -- let's just look at what the test is.

6    The test that the government has said that I need to

7    overcome the privilege here, given the fact that it's

8    testimony in connection with a grand jury subpoena -- this

9    particular context -- is to look to see whether the

10   government has specifically demonstrated:  One, why it is

11   likely that evidence contained in presidential

12   communications is important to the ongoing grand jury

13   investigation; and, two, why this evidence is not available

14   from another source.

15           Do you think that a review of any public interests

16   at stake in this matter would also be something I needed to

17   look at?

18           MR. PELLETTIERI:  Your Honor, I am not aware of

19   that as being a component of the standard; its importance,

20   which is judged against the grand jury's -- topic of the

21   grand jury's investigation; and it's unavailable without

22   diligence elsewhere.  And --

23           THE COURT:  Well, it's sort of -- the section of

24   *In re Sealed Case*, page 746, where the court says:  While

25   both the deliberative process privilege and the presidential

1   privilege are qualified privileges, the *Nixon* cases suggest

2   that the presidential communications privilege is more

3   difficult to surmount -- okay -- so far so good.

4          And then it goes on to say:  In regard to both,

5   both courts must balance the public interests at stake in

6   determining whether the privilege should yield in a

7   particular case, and must specifically consider the need of

8   the party seeking privileged evidence.

9          So do you think that public interest in the grand

10  jury context is already subsumed by the test that *In re*

11  *Sealed Case* ultimately laid out?

12          MR. PELLETTIERI:  Yes.  We think it's baked into

13  that.  I think that the court elsewhere says that there

14  doesn't have to be a balancing anew every time a court

15  applies the importance and unavailability standard; that

16  two-prong standard bakes in the weighing of the public

17  interest.

18          THE COURT:  Okay.  I wanted to clarify that.

19          And as to -- then with respect to the

20  attorney-client privilege that the former President has

21  asserted with respect to ████████████████████████████,

22  it's the government's view that *In re Lindsey* -- which

23  rejected attorney-client privilege assertion or any common

24  interest exception for the privilege for White House counsel

25  called to testify before a grand jury -- is just dispositive

* * * * * SEALED * * * * *

1    here?

2           MR. PELLETTIERI:  Absolutely.  The argument is a

3    nonstarter under directly binding precedent in *In re*

4    *Lindsey*.

5           THE COURT:  Okay.  And then the former President

6    has suggested some procedures that I should follow here; and

7    the government urges that I reject the additional procedures

8    that have been suggested.

9           And one of those procedures that the former

10   President has suggested is that I consolidate this motion

11   with anticipated but not yet filed litigation involving

12   other witnesses.  And the President -- former President

13   makes the argument that that will facilitate judicial

14   economy by hearing and resolving all of the various

15   arguments presented by witnesses at the same time.

16          What's wrong with that analysis?

17          MR. PELLETTIERI:  Well, number one, it would not

18   facilitate judicial economy.  I think we would be in kind of

19   an infinite loop here where you get another witness.  And

20   the question is:  Do you add that to the briefing schedule,

21   another witness, because the grand jury's investigation is

22   ongoing.  And in our view, ruling on this motion -- the

23   first that raises the executive privilege in the grand

24   jury -- will clear a lot of the brush away for anything that

25   can come later because a lot of what the former President is

* * * * * SEALED * * * * *

* * * * * SEALED * * * * *

1    saying here is just a purely legal matter.  And so if the

2    Court were to rule on these legal matters, it would knock

3    them out in any kind of future proceeding involving another

4    witness.

5          It's also inconsistent with the grand jury's

6    important interest in expeditiously conducting its

7    investigation and getting the evidence that it's entitled to

8    get, so judicial economy is not served.  And it's

9    inconsistent and a real substantial tension with the

10   important role and function and proceedings of the grand

11   jury.

12         THE COURT:  And is there any concern that the

13   grand jury's need for each witness's testimony, and other

14   issues involving that witness's particular role within --

15   vis-à-vis the former President, would also raise unique

16   issues as to each witness so that that would militate

17   against consolidation because of the unique issues that each

18   witness may raise?

19         MR. PELLETTIERI:  The application of the

20   established two-part standard could differ with some

21   witnesses, yes, Your Honor.

22         THE COURT:  Okay.

23         All right.  Is there anything else that you want

24   to talk to me about or add, since I interrupted your

25   original presentation?

* * * * * SEALED * * * * *

* * * * * SEALED * * * * *

1        MR. PELLETTIERI:  No, Your Honor.  We are here --

2    I am happy to answer any questions that you have, unless you

3    don't have any additional questions.  We're happy to rest on

4    our papers.

5        Hopefully, perhaps, I will have the opportunity to

6    reply to any comments.

7        THE COURT:  Of course.  This is a little bit more

8    relaxed.  I am going to let people comment on each other.

9        Okay.  Mr. Parlatore.

10       And I take it that all three attorneys here are

11   representing the former President; is that correct?

12       MR. PARLATORE:  Yes, Your Honor.

13       THE COURT:  Okay.  I just wanted to make sure that

14   there were no representatives of the two witnesses at issue.

15       So if I can get to my questions...  If you have

16   other things you want to add afterwards, we'll get to those

17   if you don't mind; but just to save all of our time because

18   I know you are all pretty busy too --

19       MR. PARLATORE:  I was going to skip my speech and

20   go straight to your questions.  I appreciate it.

21       THE COURT:  Thank you.  Thank you.

22       There is a time for speechifying; this isn't

23   really one of them.

24       Just to make sure -- I want to be absolutely clear

25   on the record what things we're -- both sides are agreeing

* * * * * *SEALED* * * * * *

19

1    on.

2            The former President's opposition is -- which also

3    discusses executive privilege broadly, it even mentions

4    deliberative process privilege -- but the President agrees

5    that what is at issue here is the presidential

6    communications privilege; is that right?

7            MR. PARLATORE:  That's correct, Your Honor.

8            THE COURT:  All right.  And the -- and do you

9    agree with the definition, which I will repeat, of the

10   presidential communications privilege and what it covers?

11           Do you want me to repeat or you heard it?

12           MR. PARLATORE:  I heard it, Your Honor; and I

13   think you stated it correctly.

14           THE COURT:  Okay.  And of the ███ topics in the

15   cover letters to █████████ and ██████████ --

16           MR. PARLATORE:  Yes.

17           THE COURT:  -- where the government essentially

18   concedes in its opening paragraph that some of them may

19   potentially implicate it uses executive privilege, but I

20   think they mean presidential communications privilege.

21           Do you believe that each of these ███ topics --

22   would you agree -- don't implicate the core military,

23   diplomatic, or sensitive national security secrets that the

24   Supreme Court has said are entitled to the most deference?

25           MR. PARLATORE:  Not exactly, Your Honor.

1    THE COURT:  Okay.  Could you explain that?

2    MR. PARLATORE:  Sure.

3    THE COURT:  And which ones of these █ topics do

4    you think might implicate some of these core privileged

5    communications?

6    MR. PARLATORE:  Sure.

7    All of these █ topics are subsets of a larger

8    topic, and that topic is ████████████.

9    So all of these come into different facets of the

10   President's responsibility to ensure that the laws are

11   faithfully executed and -- specifically in this case -- to

12   ████████████████████████████████████

13   ████████████████████████████████████.

14   And so every single one of these goes to that.

15   And so I would quarrel with the idea that ████████

16   ████████ is not a national security issue.  We believe that

17   it is a national security issue.

18   And while, certainly, there is great disagreement

19   over ████████████████████████████████████

20   ████████████████████████████████

21   ████████████████████████████████

22   ████████, that is a national security issue.

23   THE COURT:  Well, like one of the topics is

24   ████████████████████████████████

25   ████████████████████████████████

* * * * * **SEALED** * * * * *

1 ████████████████████████████████████████████

2 ████████████████████████████

3          Would you say that that's one of the core

4 issues --

5          MR. PARLATORE:  ████████, no.

6          THE COURT:  -- core types of communications?

7          MR. PARLATORE:  ████████████████████ --

8          THE COURT:  ██████████████████, which would

9 fall outside the presidential communications privilege to

10 me.  And why would I be wrong?

11          MR. PARLATORE:  I understand.

12          There are certain aspects --

13          THE COURT:  Unless you agree with me.

14          MR. PARLATORE:  Well, I agree with you mostly,

15 Judge.

16          And part of the problem is we don't know -- I am

17 kind of shooting in the dark here somewhat because I don't

18 know what questions were asked at the grand jury --

19          THE COURT:  You and I are in the same position

20 then.

21          MR. PARLATORE:  Okay.

22          But to the extent that we're talking about ███

23 ████████████████████████████████████████████

24 ████████████████████████████████████████

25 ████████████████████████████████████████

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

1  ██████████████████████████████. So to the

2  extent that they want to ask: ████████████████

3  ████████████████████████████  That

4  would probably be on the political side.

5          But to the extent that he's saying: ███████

6  ████████████████████████████████████

7  ██████████████████████████████

8  ██████████████████████████████████

9  ██████████████████████████, then that

10  would definitely go on the other side where that would be

11  privileged.

12          THE COURT:  Okay.

13          MR. PARLATORE:  So it would be a very

14  fact-specific question, Your Honor.

15          THE COURT:  All right.  Well, this has clarified

16  where there is agreement and where there isn't, so that is

17  helpful to me.

18          So one of the things that the government has

19  argued is that, in the former President's briefing, they

20  have said that he's seeking to impose a tougher test to

21  overcome the privilege, like a showing of necessity -- which

22  is a word used in the opposition -- or critical need, rather

23  than what the *In re Sealed Case* test is, which is a likelihood

24  of important evidence and lack of availability elsewhere.

25          So is that correct?

* * * * * *SEALED* * * * * *

1          And, if so, precisely what are you seeking to change

2     in the *In re Sealed Case*? -- which is, specifically, that the

3     subpoenaed material likely contains important evidence, and

4     this evidence is not available with due diligence elsewhere.

5          MR. PARLATORE:  I think what we're trying to do

6     there, Your Honor, is we're trying to really drill down into

7     the definition of "important evidence," and what Your Honor

8     should be considering when figuring out whether this

9     evidence is, in fact, important.

10         In the *In re Sealed Case* they said that the

11    evidence sought must be directly relevant to issues that are

12    expected to be central in the trial.  And so if you then

13    look back at, for example, the *Nixon v Sirica* case, where it

14    talks about a uniquely powerful showing by the special

15    prosecutor in that case which overcame the privilege.

16         So the reason why we're raising those issues is

17    really to drill into:  What is the definition?  What is the

18    actual standard of "important evidence"?

19         In this case -- and, again, I haven't seen what

20    they've presented to the grand jury or what's in any

21    *ex parte* submissions.  But from the outside looking in, what

22    we see is -- we are not seeing that they are in fact -- that

23    this grand jury is, in fact, investigating a crime.  It's

24    investigating ███████████████████████████████████████

25    ███████████, but not an actual crime.

* * * * * **SEALED** * * * * *

1    THE COURT:  Well, this was an area I wanted to ask

2    you about in your brief because you sort of elaborate a

3    little bit on this in your brief because you argue that the

4    government must demonstrate -- and I quote:  The viability

5    of the underlying investigation, which -- as you have just

6    said -- well, what you say in your papers is -- requires a

7    showing beyond a reasonable doubt that a criminal offense

8    has occurred before overcoming any presidential

9    communications privilege issue.  And I think that's the

10   point you are getting to right now.

11         MR. PARLATORE:  Yes, it is.

12         THE COURT:  So you -- so this is --

13         MR. PARLATORE:  I am not suggesting that's the

14   standard right now, Judge.

15         THE COURT:  Okay.  So I wanted to understand what

16   are you talking about because the grand jury is entitled to

17   conduct an investigation based on a suspicion, not on a

18   showing -- a suspicion that criminal conduct has been

19   undertaken, not on a showing of beyond a reasonable doubt

20   that a criminal offense has occurred, not the trial

21   standard.

22         MR. PARLATORE:  Correct.

23         THE COURT:  So I really wanted -- I really puzzled

24   over that statement in the opposition, at page 6, note 3.

25         MR. PARLATORE:  Sure.

* * * * * *SEALED* * * * * *

1          THE COURT:  What are you asking me to do?

2          MR. PARLATORE:  Sure.  Perhaps that was inartfully

3   stated, Your Honor.  I am not asking you to make a finding

4   of reasonable doubt at this point.

5          But the reality is -- and going back to the

6   standard here that these are issues -- they must be directly

7   relevant issues expected to be central at trial.  So any

8   indictment that could potentially come would be something

9   that would later have to be proved beyond a reasonable

10  doubt.

11         THE COURT:  Of course.

12         MR. PARLATORE:  In the grand jury --

13         THE COURT:  But that is not the standard for the

14  grand jury.

15         MR. PARLATORE:  No, it's not.  And I am not

16  arguing that that is the standard here.  And I apologize if

17  that was unclear from our papers.

18         What we're arguing here is that the conduct that

19  is being investigated is not a crime.  And the government,

20  DOJ, have -- their responsibility before the grand jury is

21  to instruct them and to guide them on the law and make sure

22  that they are not, for political reasons, going down the

23  path of investigating conduct that is not criminal.

24         THE COURT:  Well, let's say that the government

25  has obtained search warrants from a number of different

1    magistrate judges and judges around the country upon showing

2    probable cause to believe a crime has been committed related

3    to some of these topics, if not all of these topics.  So

4    they have gotten search warrants based on probable cause to

5    believe a crime has been committed -- even more than a

6    showing of a suspicion, which is all the grand jury requires

7    to begin an investigation.

8         So wouldn't that satisfy whatever special test you

9    are trying to get me to focus on as -- is there a crime here

10   that's being investigated, based on the fact that they have

11   already obtained -- you know, say they have obtained a lot

12   of search warrants based on -- predicated on probable cause,

13   I am sure you are aware of.  Haven't they more than met that

14   threshold already to present that evidence obtained from

15   search warrants to the grand jury that that has satisfied

16   more than the mere suspicion required for a grand jury

17   investigation?

18        MR. PARLATORE:  Without reading the affidavits in

19   support of those search warrants, I would have to say no,

20   Judge.  Because here, although they may have presented

21   affidavits to magistrates that they were able to obtain

22   warrants, the fact -- the unfortunate fact is that --

23   especially when it comes to political issues such as this,

24   DOJ has in the past -- and I am not accusing them of any

25   intentional wrongdoing -- but they have in the past

* * * * * **SEALED** * * * * *

1    submitted affidavits to obtain search warrants that were not

2    supported by probable cause.  You know, consider, for

3    example, the FISA warrants into Carter Page which were later

4    admitted by DOJ to not be supported by probable cause.

5            So the fact that -- in a separate proceeding in

6    front of a magistrate, that they made a presentation to

7    them -- this application is before you, Your Honor.  And I

8    would say that for you to make a determination as to whether

9    this evidence is important, Your Honor should make that

10   determination as to whether what they are investigating is

11   in fact a crime.  And I can go a little bit more into the

12   specifics of why I believe that what they're investigating

13   is not a crime here, if you would like --

14           THE COURT:  Well, I have seen, in your opposition,

15   your same footnote.  I mean, you have said that the

16   prosecution bears the burden of proving beyond a reasonable

17   doubt, *inter alia*, ██████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████.

22           You go on to say, but the government cannot prove

23   that ███████████████████████████████

24   ████████████████████████████████████

25   ████████████████████████████████████

* * * * * *SEALED* * * * * *

\* \* \* \* \* SEALED \* \* \* \* \*



6       Finally, the government cannot establish ▌

9       So I think that's what you were about to go on to

10   say, right? -- because you have made that argument in your

11   opposition.

17       So I look at that and I think, well, there is the

18   defense.  Should the grand jury ever return an indictment

19   against the former President, you have got your summation

20   already done -- summation to the jury --

21           MR. PARLATORE:  Or motion to dismiss.

22           THE COURT:  -- or motion to dismiss.

23       The issue, as I see it, is the job of the grand

24   jury is to do precisely what you are asking me to do --

25   which is to look at the evidence collected and decide:  Was

\* \* \* \* \* SEALED  \* \* \* \* \*

1    there criminal conduct here or was there not? -- and to

2    decide -- and it happens that the grand jury decides there

3    is insufficient evidence to indict and returns no true

4    bills.  I supervise the grand jury; I can tell you it

5    happens.

6           MR. PARLATORE:  Absolutely.

7           THE COURT:  So to me, that is the job of the grand

8    jury.  It is not in my job description, I think, to make

9    that decision for the grand jury; and that is, in some

10   ways -- as I read your papers, is that what you are asking

11   me to do?

12          MR. PARLATORE:  Not exactly, Your Honor.  You are

13   absolutely right, that is within the province of the grand

14   jury.

15          What I am asking you to do is:  In evaluating this

16   particular prong of whether it is important evidence, has

17   the government presented things to the grand jury on these

18   threshold issues, or are they jumping straight ahead to the

19   conclusion and saying, well, let's start by trying to invade

20   the privilege.

21          And so if Your Honor accepts my reasoning here,

22   then I would expect Your Honor's decision to be something

23   along the lines of:  Based on what you have presented so far

24   you are not there yet, and the motion is denied without

25   prejudice to -- if you go back and you do present evidence

\* \* \* \* \* SEALED \* \* \* \* \*

1    to the grand jury on these certain threshold issues to show

2    that you are, in fact, investigating a crime and, therefore,

3    it is, in fact, important evidence, then you can come back

4    to me at that point.  That's really what I am driving at

5    here, Judge --

6          THE COURT:  Which is sort of jumping to some of

7    the issues in terms of your suggestions of different steps

8    that I can take, which is that I give you an opportunity to

9    further develop whatever it is -- further develop your

10   position.

11         And I really -- how did you put it?  I was

12   actually was going to ask you about this, so we may as well

13   jump to it.

14         The way you put it was:  An opportunity to raise

15   more particularized claims of privilege; is that what you

16   were referring to?

17         MR. PARLATORE:  Yes, Your Honor.  And if I may

18   address that --

19         THE COURT:  I had no idea what you were talking

20   about, to be honest, so I was going to ask you to please

21   elaborate.  What are you asking of me?

22         MR. PARLATORE:  Sure.

23         The first two witnesses that we're discussing here

24   today ███████████████████████████.  The next two

25   witnesses ████████████████████████████████,

\* \* \* \* \* SEALED \* \* \* \* \*

1  ██████████████████████████████████████.

2         So not -- as opposed to what the government was

3  just saying about leaving this as a completely open-ended

4  thing, all we're asking for is to take these four witnesses

5  together because certainly, when it comes to the

6  attorney-client privilege issues, there are certain

7  particularized fact-specific inquiries that go to ████████

8  ██████████████████████.  And, really, we're kind of starting

9  with these two witnesses that are ████████████████████

10  ████████████  and trying to say, okay, there is no executive

11  privilege here, and then walking --

12         THE COURT:  Well, let's be careful and just --

13  because "executive privilege" is a phrase that's thrown

14  around a lot, I mean, because it comes up so often in the

15  FOIA context when people, really, are talking about

16  deliberative process privilege and really sometimes only

17  presidential communications privilege, which doesn't

18  necessarily -- which doesn't typically reach down into the

19  bowels of federal agencies --

20         MR. PARLATORE:  Right.

21         THE COURT:  -- the way that we're talking about

22  the presidential communications privilege here.  So let's

23  just not mix things up.  We're talking about the

24  presidential communications privilege.

25         MR. PARLATORE:  Correct.

* * * * * **SEALED** * * * * *

1      And since the next two witnesses that are going to

2   come before Your Honor are ███████████████████████

3   ██████, our request is simply to take these four witnesses

4   together; not to leave it open-ended for any additional

5   witness.

6      If -- I believe that how Your Honor decides these

7   four witnesses will largely set the precedent for the

8   witnesses that come thereafter.  There may be very

9   individualized fact-specific inquiries as to some of them,

10   but that's --

11      THE COURT:  Let me -- and I appreciate -- look,

12   judges hear the word "consolidation" and "judicial

13   efficiency," and that's music to our ears, so you used the

14   right words to get my attention.

15      But I -- the way I deal with privilege issues,

16   it's so context specific, witness by witness; the specific

17   role of the witness; timing of the communications; scope of

18   the communications; scope of the role -- it is so

19   particularized to each witness, I am reluctant to go

20   beyond -- I mean, these two witnesses alone have very

21   different roles.

22      MR. PARLATORE:  They do.

23      THE COURT:  And the privilege assessment here

24   that's particularized to each of these witnesses is plenty

25   for me to chew on without then getting into more complex

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

1    privilege issues ████████████████████████████

2    ████████.  So I am just being honest with you.

3             Although consolidation, at first blush, as I said,

4    you know, usually is something I consider pretty seriously,

5    in the privileged context, I am not sure it does anything

6    more than complicate the discussion when each individual has

7    to be looked at individually with -- in context and role; so

8    I am just telling you right off the bat.

9             But let's turn to the attorney-client privilege

10   for ████ -- that you assert applies to ████████, who was

11   serving as ████████████████████████.  And the

12   former President makes the assertion that he shared a common

13   interest privilege with ████████████████████████████

14   ████████████████████████████.

15            As I read *In re Lindsey*, it rejected the

16   attorney-client privilege assertion and any common interest

17   extension of that privilege ████████████████.  So the

18   government is clear, they think *In re Lindsey* is dispositive

19   here.

20            Why isn't *In re Lindsey* dispositive here, even on

21   the common interest argument that you have made or the

22   direct attorney-client privilege?

23            MR. PARLATORE:  Sure.  And this obviously will

24   become more relevant with the next two witnesses.

25            But the reason why it doesn't control here is

* * * * * *SEALED* * * * * *

* * * * * **SEALED** * * * * *

1    because that presumes that this testimony would be about

2    observing criminal conduct by members of the executive

3    branch; that's what *Lindsey* dealt with.

4         *Lindsey* dealt with:  There is no privilege that

5    would prevent a government attorney from providing

6    information about their observations of criminal conduct by

7    members of the executive branch.

8         But, here, what they want to do is they want to

9    get into privileged attorney-client communications about the

10   legalities of how to deal with a situation where there

11   appears to be ████████████████████████████████████

12   ██████.  So this is not a situation where they're asking

13   about:  What are their observations of criminal conduct by

14   members of the executive branch.  But, rather, they're

15   asking about:  What are the communications, discussions, and

16   possible responses by the executive branch to ████████

17   ████████████████████████████████████████████████████

18   ████████████████.

19        So what they're asking you to do is to say there

20   is no attorney-client privilege just based on the

21   presumption that there must be criminal conduct by members

22   of the executive branch they're going to talk about; and

23   without that threshold showing, the attorney-client

24   privilege can't be vitiated.  So that's why the

25   attorney-client privilege in *In re Lindsey* does not preclude

* * * * * *SEALED* * * * *

1    it here.

2                The same issue is going to come --

3                THE COURT:  It goes back to what is the showing

4    that there is criminal conduct here?

5                MR. PARLATORE:  Correct.  It does go back to that.

6    And it overlaps with the important need or important

7    evidence; it all does go back to that issue.

8                Because, ultimately, if this grand jury is

9    investigating all of the specifics of how the prior

10   administration operated on something that the current

11   administration simply disagrees with, that's not something

12   that -- it's certainly something that a grand jury should

13   come to a no true bill on; but it's not something that

14   justifies invading multiple privileges in getting to that

15   result.

16               THE COURT:  I would agree with you on that broad

17   statement.  And there has to be -- and I also agree with you

18   that the grand jury has to be investigating based on at

19   least a suspicion -- even more than that, a reasonable

20   suspicion of criminal conduct.  And if the criminal conduct

21   is ███████████████████████████████████████████████

22   ██████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████████

24   ███████████ .

25               MR. PARLATORE:  Sure.

* * * * * SEALED * * * * *

1     THE COURT:  And it may be that there is going to

2  be -- you know, it may be that there is going to be some

3  line-drawing; that somebody in the prosecutor's office is

4  going to have to make -- or the Attorney General's office is

5  going to make decisions at what point is this █████████

6  ████████████████████████████████████████████

7  ████████████████████████████████████████████████

8  ████████████████████████████████████.

9     And the first stop in making that assessment of

10  whether lines were crossed between ███████████████████

11  ██████████████████████ is in the grand jury.

12     Now, I appreciate that you are saying I have to --

13  I am the first stop in this context for the presidential

14  communications privilege; but, ultimately, it's the grand

15  jury that is going to be making a decision as to whether

16  those lines were crossed sufficient to warrant any kind of

17  formal charge so that you can -- so at some point you may be

18  making your summation in a public forum.  Okay.

19     But that's essentially -- but I think I understand

20  that, essentially, that's -- *In re Lindsey* you would agree

21  would be dispositive, but only if I meet that threshold test

22  is there criminal activity that has been sufficiently shown.

23     And in making that evaluation of sufficient

24  showing, are you saying that I have to apply a higher test

25  than would be required of the grand jury?

* * * * * *SEALED* * * * * *

1       MR. PARLATORE:  I am saying that in order to --

2       THE COURT:  Because all of the -- sorry to

3   interrupt you.

4       Just to be clear, all the grand jury has to

5   operate on is a suspicion of the commission of criminal

6   activity.  And you've thrown around things I have already

7   quoted, reasonable -- beyond a reasonable doubt, and so

8   on -- not even "preponderance."

9       So if I accept what you are saying is right, I

10  have to make some kind of finding of some criminal activity

11  that would warrant the need for the information to the grand

12  jury.  Should that test of whether there is criminal

13  activity essentially be the same one that the grand jury

14  operates on?  Because if I apply a higher standard, am I not

15  supplanting the grand jury's role?

16      MR. PARLATORE:  And I think that that is -- I

17  understand your question, Your Honor.  It's not exactly

18  that.

19      It all goes into your determination of important

20  evidence.  And so we're not asking you to decide the

21  entirety of what the grand jury must decide.

22      But, at a minimum, our position is that in order

23  to invade the privileges Your Honor should perform that

24  introductory test of looking at what the grand jury is

25  examining, determining whether they are -- I am trying to

1     think of a more artful way of saying it because it's not --

2     I am not asking you to make a determination that a crime has

3     been committed.  But, rather, if the government's theory is

4     correct, would that even constitute a crime?

5              I am kind of going with a 12(b)(6) kind of

6     standard here in a weird way.  But if they're investigating

7     something and -- in all of the evidence that they have

8     presented they're just missing some elements entirely, and

9     they're saying:  We're just going to skip these elements of

10    the crime, but we'd like to invade privilege now -- that's

11    kind of -- that's what we're asking you to take a look at

12    is -- in determining whether it is important evidence, how

13    important is it?

14             If they are totally skipping necessary elements --

15    which the grand jury will decide, but they haven't even

16    presented anything.

17             Again, I'm shooting in the dark here.  But based

18    on our knowledge of the facts, we presume that there are

19    certain elements that they are not presenting anything on

20    because nothing exists.  If they're not and, therefore, all

21    of the conduct that they're trying to prove would not, if

22    true, even constitute legally a crime, then is it really

23    that important evidence for Your Honor to say, okay, you may

24    invade the privilege?

25             THE COURT:  But at the same time the -- well, I

* * * * * SEALED * * * * *

1    think among the things that you have pointed out that the

2    government would need to prove is that ███████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████

6    ███████████ .

7               So it may be that if these witnesses testify to

8    that, that this grand jury investigation, at least vis-à-vis

9    former President Trump, if he is a target, would be over

10   fairly quickly; although there might be other people who are

11   targets of the investigation.

12               MR. PARLATORE:  And this would go to our

13   *ex parte* --

14               THE COURT:  So that point, in some ways,

15   overcoming the privilege would be very important information

16   for the grand jury to hear from these witnesses.

17               So do you see what I mean?

18               Doesn't it work the opposite way if these

19   witnesses actually will say that?

20               MR. PARLATORE:  But they don't know that they're

21   going to say that, that's the problem judge.  And this goes

22   into our request for you to review *in camera*.  And I

23   recognize that this -- we are dealing --

24               THE COURT:  Well, let's go to that *in camera*,

25   because I puzzled over --

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

1    MR. PARLATORE:  I have a suggestion --

2    THE COURT:  I puzzled over that.

3    Let me just lay out -- to make sure I haven't

4    missed something, because I sort of distilled this from your

5    opposition -- all of the different suggested steps that I

6    take; and then we can just have them laid out.  I found

7    four.  And I wanted to make sure that I wasn't missing any

8    steps from your brief.

9    MR. PARLATORE:  Okay.

10    THE COURT:  So you have suggested then, in

11    resolving the pending motion to compel, I, one, evaluate the

12    viability of the underlying investigation to see if there is

13    an actual need to invade the privilege.  I think we have

14    beaten that one to death, unless you want to add more.

15    Two, conduct an *in camera* review to ensure that

16    only evidence relevant to the grand jury's inquiry is

17    disclosed.  That's a puzzle to me, so we're going to come

18    back to that.

19    MR. PARLATORE:  Okay.

20    THE COURT:  Three, provide the former President

21    with an opportunity to raise more particularized claims of

22    privilege.  That also was a puzzle to me, so I want you to

23    explain that.

24    And then, four, reserve ruling on the pending

25    motion to compel the ███████████████████████████████

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

1    ███████████ so that we can consolidate with the other

2    potential grand jury witnesses, ████████████████████

3    ████████████████.  So I think I have already sort of told

4    you where I am coming out on the consolidations.

5            But let's go to the last -- did I miss any of the

6    steps other than those four?

7            MR. PARLATORE:  No, Your Honor.

8            Although, I would say that we're not asking to

9    consolidate ████████████; it's just those four first

10   witness, that's all we're asking for.

11           THE COURT:  I got it.  Okay.  Whether it's four or

12   two, you sort of know my instinct on the consolidation; I

13   want to deal with everybody individually.

14           MR. PARLATORE:  I understand.

15           THE COURT:  So let's talk about the second step

16   and the third step, conducting an *in camera* review to ensure

17   that only evidence relevant to the grand jury's inquiry is

18   disclosed.  What am I supposed to do about that?

19           This is not a document case where it would be easy

20   for me to do an *in camera* review -- not easy --

21           MR. PARLATORE:  Correct.

22           THE COURT:  -- but I could that.

23           These are grand jury witnesses.  I am merely the

24   supervising judge of the grand jury.

25           I don't sit in the grand jury.  I don't know

* * * * * SEALED * * * * *

* * * * * SEALED * * * * *

1  everything about their grand jury investigation or what

2  questions to ask; so I certainly couldn't conduct an

3  *in camera* colloquy with these witnesses because the

4  government knows where it's going with its investigation, as

5  does the grand jury, I don't.  I am merely a judge.

6           MR. PARLATORE:  Right.

7           THE COURT:  So what do you have in mind?

8           MR. PARLATORE:  My suggestion here, Your Honor,

9  is -- they have already gone in front of the grand jury;

10  they have already been asked these questions; they have

11  already asserted the privilege.

12           And I am guessing from the government's submission

13  that they have provided you with a transcript of that

14  *ex parte*; maybe I am wrong, but that's the guess that I am

15  reading between the lines.

16           These witnesses are both represented by counsel.

17  And through counsel they could provide Your Honor an

18  *ex parte* written submission that gives you a summary of what

19  their testimony would be because -- as Your Honor properly

20  said earlier, if they're going to come in and say, ████

21  ████████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████ --

23  if that's something that was submitted to you, you are

24  probably going to turn around and say, oh, that's important

25  evidence; go ahead and put it in.

* * * * * SEALED * * * * *

* * * * * SEALED * * * * *

1    If, instead, the information that they give you

2    is: ██████████████████████████████████████████

3    ████████████████████████████████████████████████

4    ███████████████████████████████, then -- while that

5    is certainly something that is helpful to the president and

6    would be helpful to the grand jury coming to a no true bill,

7    is that something that is worth vitiating the privilege?

8    And so our suggestion here -- because I recognize

9    you don't have time to take the transcript and then sit down

10    with the witnesses and ask all of the questions yourself --

11    THE COURT:  I wouldn't know where to begin to ask

12    the questions because I merely supervise the grand jury.  I

13    don't --

14    MR. PARLATORE:  Right.

15    THE COURT:  I am not really permitted to certainly

16    intervene in a grand jury investigation.

17    MR. PARLATORE:  But as these questions have

18    already been asked, the witnesses certainly know exactly

19    what the government -- what information the government is

20    looking for from them, they can provide Your Honor with an

21    ex parte summary of what that testimony would be, whether

22    that's something that gets shared with us is obviously up to

23    Your Honor --

24    THE COURT:  So it would both -- so this suggestion

25    would involve this Court in the fundamental

* * * * * SEALED * * * * *

* * * * * SEALED * * * * *

1    information-gathering process of the grand jury in ways that

2    I think would be unprecedented.  It would -- if your

3    requests were approved -- share what would otherwise be

4    protected 6(e) testimony with the former President who might

5    be a potential target --

6              MR. PARLATORE:  I haven't asked for that yet.

7              THE COURT:  It would -- it would possibly and

8    potentially keep from the grand jury information that could

9    be highly relevant to the grand jury's decision of whether

10   to proceed with formal charges or not, which sounds to me

11   like -- if it were helpful, something that the grand jury

12   should certainly have access to.

13             MR. PARLATORE:  But that's --

14             THE COURT:  I really -- but, mechanically, I

15   understand better what you were talking about.

16             MR. PARLATORE:  That's the important --

17             THE COURT:  Although I am going to have to puzzle

18   over that one.  Then --

19             MR. PARLATORE:  Your Honor --

20             THE COURT:  I'm sorry.  Go ahead.

21             MR. PARLATORE:  If I may, that is the important

22   evidence standard.  And that ordinarily, when we're dealing

23   with documents, Your Honor would be able to review those

24   *in camera*.  Because here it's a witness and, therefore, Your

25   Honor is trying to make a decision in the dark, I am

* * * * * *SEALED* * * * * *

* * * * * SEALED * * * * *

1    suggesting a procedure whereby Your Honor can make a more

2    informed decision of knowing what exactly the government is

3    trying to elicit to put in front of the grand jury so that

4    Your Honor can make that decision of whether it's important.

5            THE COURT:  You know, I was a former prosecutor.

6    And getting proffers from lawyers about what their client

7    would or would not say is something that regularly happens

8    for prosecutors.

9            I mean, I have never heard of a presiding judge of

10   a grand jury demanding a proffer from a grand jury witness

11   before I even let the witness testify; it's a very

12   unusual -- creative, clever even -- suggestion; and I will

13   be interested to hear the government's response to that.

14           MR. PARLATORE:  The reality, Judge, this entire

15   case --

16           THE COURT:  Excuse me.

17           MR. PARLATORE:  This entire case -- the fact that

18   we're talking about some of these issues is, in and of

19   itself, unprecedented and unusual.

20           THE COURT:  Not necessarily.  I mean, Presidents

21   have been investigated before, and in this Court.

22           Not me -- meaning this Court -- this court,

23   speaking for the District Court for the District of

24   Columbia.  This is not -- that's not that unusual.

25           Okay.  So now your next -- your next step,

* * * * * SEALED * * * * *

1   providing the former President with an opportunity to raise

2   more particularized claims of privilege, you certainly are

3   going to probably raise more particularized claims of

4   privilege when it comes to the other potential grand jury

5   witnesses.

6        MR. PARLATORE:  Correct.  I think three and four

7   might be switched.

8        THE COURT:  But what -- no, three is provide

9   former -- anyway, it doesn't matter.

10       Could you explain, mechanically, what you're

11  describing, in terms of your opportunity to raise more

12  particularized claims of privilege?

13       MR. PARLATORE:  With regard to the next two

14  witnesses?

15       THE COURT:  It's really just the next two

16  witnesses.

17       MR. PARLATORE:  Three and four may be reversed or

18  subsumed.  I am really talking there about -- I am really

19  talking there about the specifics related to the second two

20  witnesses.

21       THE COURT:  Okay.  And I don't have a motion to

22  compel with respect to them, so that only actually proves my

23  concern about a consolidation.  I want to deal with them

24  separately; and I appreciate the sensitivity of those two,

25  as opposed to the two witnesses who are at issue in this

* * * * * SEALED * * * * *

1    motion to compel.

2            Let me just make sure there wasn't anything else I

3    needed some clarification from you on.

4            Okay.  What else do you think I need to know?

5            MR. PARLATORE:  Your Honor, one final point that I

6    would leave you with is this, this case --

7            THE COURT:  Could you speak up into the

8    microphone?  You are tall.  You can raise that so it's

9    easier for you.

10           MR. PARLATORE:  So one final point.

11           This case is complicated by the fact that

12   President Trump essentially has a dual role, in that he was

13   the incumbent President at the time, but he was also a

14   candidate.  You had asked the government earlier about

15   whether these things were part of his executive function or

16   political questions, and that's really where this gets

17   muddy.

18           Depending on your point of view, you could sit

19   there and say:  ███████████████████████████

20   █████████████████████████████████████████████████

21   ████████████████████.  But yet, on the flip side of it,

22   as the sitting President, who is mandated by Article II to

23   ensure that the laws of this country are faithfully

24   executed, we want the President to be able to communicate

25   with his advisors, to ask them questions, and to say:  ████

* * * * * SEALED * * * * *

* * * * * **SEALED** * * * * *

1   ████████████████████████████████████████

2   ███████████████████████████████████

3        █████████████████████████

4        █████████████████████████████████████

5   ██████████████████████████████████████████

6   ████████

7        And I think a lot of that comes into ████████████

8   ██████████████████████████████████████████████

9   ██████████████████████████████████████████████

10  ███████████████████████████████████████████

11  ██████████████████████████.

12       So if -- set the specifics of what everybody feels

13  about these particular two candidates aside.  ████████████

14  ████████████████████████████████████████████

15  ██████████████████████████████, what do we want them

16  to do?

17       I submit to you that this is exactly what we would

18  want them to do.  ████████████████████████████████

19  ██████████████████████████████████████████████████

20  ██████████████████████████ -- and this goes back

21  to the public interest -- do we really want in the public

22  interest for their political rival, who then comes after

23  them, to then invade the privilege to try to go back --

24  without regard to whether it's actually criminal or not, to

25  invade these privileges?

* * * * * *SEALED* * * * * *

1    And there are a couple of points that must be

2    mentioned here.  I am not saying here ███████████████

3    ██████████████████████████████████████████████

4    ██████████████████████████████████████████████

5    ██████████████████████████████████████████

6    ███████████████████████████████████████████████

7    ████████████████████████████████████████████.

8    But there is binding precedent now that, ██████████

9    ██████████████████████████████████████████████

10   ███████████████████████████████████████████████

11   ██████████████████████

12        Here is another thing.  ███████████████████ --

13   Your Honor cited the statute earlier -- just yesterday the

14   House passed a resolution to ████████████████████████

15   ███████████████████████████████████████████████

16   ██████████████████████████████████████████████

17   ██████████████████████████████████████████████

18   ███████████████████████████████████████████████

19   █████████████████████████.

20        So when Your Honor is looking at whether they have

21   met the standard of important evidence, I would ask Your

22   Honor to consider all of these factors, and not -- not just

23   President Trump as a candidate for reelection, but also as

24   the chief executive and what we want him to do in seeking

25   advice, and what precedent we want to set for the subsequent

* * * * * SEALED * * * * *

1    administration to be able to invade that advice because

2    whatever gets decided here -- whatever precedent gets set

3    could have reverberations for future presidential turnovers.

4    And that's why this is such an important issue and why --

5    when I say we should consolidate these -- they want to talk

6    about let's move forward, the grand jury has to move

7    forward, we're a month and a half from the next election.

8    And everything this grand jury does --

9            THE COURT:  Is in secret.

10            MR. PARLATORE:  And yet, ██████████████

11    subpoenas, *The New York Times* immediately knows about it;

12    that's not something the witnesses know.  When they execute

13    a search warrant, *The New York Times* is told about it.

14            45 days -- 46 or 47 days before an election we are

15    at right now.  So, for that reason, Your Honor, I would

16    suggest, before invading this privilege, we try to be as

17    careful as possible, make sure we get it right.

18            We do have the ██████████████ that is -- I am

19    sure they are going to be filing a motion on that shortly.

20    ██████████████████████, so we're only talking about

21    another week or so likely before they file that motion.  Why

22    not bring them together to make sure we get it right, as

23    opposed to rushing forward so we can get these two witnesses

24    into the grand -- assuming Your Honor agrees with them --

25    getting these two witnesses into the grand jury, telling *The*

* * * * * *SEALED* * * * * *

1  *New York Times* these two witnesses went into the grand jury

2  before the election.

3          THE COURT:  So just to be clear, are you accusing

4  the government of leaking who is testifying in front of the

5  grand jury?

6          MR. PARLATORE:  I am not accusing them directly of

7  that, Your Honor.  The reality --

8          THE COURT:  Are we already in that game at this

9  point? -- I mean, which happens in every single one of

10  these, it seems like, in these investigations.  But, really,

11  are we there already?

12          MR. PARLATORE:  The reality is that materials

13  before the grand jury, who gets subpoenaed, is something

14  that is sent to the media.  I don't know --

15          THE COURT:  Yes.  Because the one party -- you

16  know, the one player in a grand jury proceeding that's not

17  subject to grand jury secrecy is the grand jury witness, the

18  grand jury witness's lawyer --

19          MR. PARLATORE:  I doubt --

20          THE COURT:  So it's -- I would not be surprised if

21  the people who are not subject to any obligation of secrecy

22  before the grand jury are the people from whom information

23  is -- to the extent there are leaks or information about

24  what is going on in the grand jury, it's coming from there.

25          MR. PARLATORE:  I would hope that there is an

1    investigation into that.  I can't imagine that any witness

2    knew enough to tell *The New York Times*, hey, 40 subpoenas

3    went out today.

4         And I know from -- one of the people that was

5    subpoenaed was another of my clients.  Neither he nor I told

6    *The New York Times*, yet *The New York Times* called me to say:

7    Hey, I want to talk to you about your client who we were

8    told was subpoenaed.  So it's not specifically relevant to

9    this issue, but I do hope there is some investigation as to

10   why this information is being put out so close to an

11   election.  And it is relevant only insofar as I am saying:

12   Let's not rush this.  Let's make sure we get it right.

13             THE COURT:  Well, I would say this is not rushed.

14             MR. PARLATORE:  I am not accusing you --

15             THE COURT:  I mean, the government -- I adopted a

16   schedule for briefing that the parties agreed to.  You know,

17   this is -- and it was on a much longer schedule than I think

18   the government would have liked --

19             MR. PARLATORE:  I am only talking about the

20   consolidation.

21             THE COURT:  -- and so this is not being rushed.

22             MR. PARLATORE:  I am only talking about the

23   consolidation because that is what their opposition was, to

24   the -- President Trump should not continue to delay these

25   proceedings.  And I am addressing that point that was in

* * * * * SEALED * * * * *

1    their reply.

2              THE COURT:  All right.  Thank you.

3              Mr. Pellettieri, do you want to respond?

4              MR. PELLETTIERI:  Thank you, Your Honor.

5              I am happy to answer any questions.

6              But I would just like to make a broader point that

7    much of the former President's submissions fundamentally

8    misunderstand the role and function of the grand jury.

9              THE COURT:  But doesn't he have a point?  That

10   before I just let the grand jury willy-nilly break a

11   privilege, don't I have to be persuaded that there is some

12   criminal activity -- at least have a reasonable suspicion

13   that there is some criminal activity that is the subject of

14   the grand jury's investigation and that it is not just

15   investigating political operations from a prior

16   administration?  I think you would agree with that, that's

17   why you gave me a whole *ex parte* submission, right?

18             MR. PELLETTIERI:  Yes.  I mean, in *R. Enterprises*,

19   for example, the Supreme Court went through a lot of this.

20             THE COURT:  You are talking too fast.  You are

21   swallowing your words.  I couldn't understand you, so I am

22   sure my court reporter is having difficulty.

23             Would you repeat that more slowly?

24             MR. PELLETTIERI:  Yes, Your Honor.

25             Yes.  I think a lot of this is discussed in the

1    Supreme Court's decision in *R. Enterprises*, which discusses

2    the function of the grand jury and the role of the grand

3    jury.  It can investigate merely on suspicion that the law

4    is being violated or even just because it wants assurance

5    that it is not; that's from *R. Enterprises*.

6           The function of the grand jury is to inquire into

7    all information that might possibly bear on its

8    investigation until it has identified an offense or has

9    satisfied itself that none has incident occurred.  The grand

10   jury paints with a broad brush.

11          So, yes, there has to be a general subject matter

12   of suspicion of criminal activity; but it's the grand jury's

13   role and function to delve into that -- to dig, and come to

14   a conclusion whether that suspicion is founded or unfounded.

15   And they can't fulfill that function without obtaining the

16   evidence, in our view; and we have made the showing

17   *ex parte.*

18          The testimony by ███████████ is important to

19   the grand jury's investigation here.

20          I think the language of that -- the *Espy* case uses

21   is directly relevant.  And we have shown -- and we'd be

22   happy to go into it in more detail in an *ex parte* session if

23   you want.  But we have shown that the testimony of those two

24   witnesses would be directly relevant to the investigation

25   being conducted by the grand jury.

* * * * * SEALED * * * * *

1    It puts the cart entirely before the horse to say

2  that we have to show beyond a reasonable doubt that a crime

3  occurred before the grand jury can get information to

4  determine whether a crime did or did not occur.

5    I think that goes into -- that leaks into a number

6  of points that the former President made, about both the

7  standard for importance and also this notion of the need for

8  *in camera* review.

9    THE COURT:  Well, now that I understand at

10  least -- perhaps you did from informal conferral with the

11  former President's counsel, but the -- now that I better

12  understand the *in camera* review for a testimonial --

13  testimony before the grand jury, what is your response to

14  those mechanics, basically of asking for a proffer from the

15  grand jury witnesses; me reviewing it and seeing if it's --

16  I mean, it might be explosive.  Who knows?

17    If it's explosive, you know, information about

18  ████████████████████████████████████████████████████

19  ██████ -- and even under their standard would help prove

20  ████████████████████████████████████████████████████

21  ████████████████████ -- wouldn't that be helpful to know

22  before I broke the privilege?  What's so wrong with their

23  idea?

24    MR. PELLETTIERI:  Well, there are a few things

25  that are wrong with it.

* * * * * *SEALED* * * * * *

1          First, the mechanics that they suggest are so

2     outside of anything that we have ever contemplated or seen

3     or thought of or even thought could possibly be proposed --

4          THE COURT:  I know.  I thought it was very clever

5     and creative.

6          MR. PELLETTIERI:  The idea that a potential grand

7     jury witness's lawyer would come and then meet with a judge

8     outside the grand jury is so inconsistent with the practice

9     of a grand jury it's not something we even thought would

10    come up here today.  So that, to us, is just a nonstarter.

11         More broadly speaking about *in camera* review,

12    number one, it provides no benefit here; and, number two, it

13    imposes substantial costs.  It is of no benefit because we

14    have shown in our *ex parte* submission why this evidence is

15    important.

16         And in the context of a testimony by an

17    individual -- that showing itself demonstrates that the

18    testimony is going to be relevant to the grand jury's

19    investigation.

20         Take, for example, just a hypothetical where you

21    have a presidential advisor putting together a document, a

22    briefing document -- maybe it's the President's daily

23    brief -- that has ten subject matter that are addressed in

24    this document, and that advisor goes and gives a

25    presentation to the President on those ten topics.  And

1    then, later, a grand jury convenes that is investigating one

2    out of those ten topics for potential criminality.  We would

3    be able to show that that document is important to the grand

4    jury and that -- then, at that point, under the *Espy* case

5    and *Nixon,* the Court could conduct an *in camera* review and

6    redact the nine out of the ten that are not relevant, and

7    then send the one out of the ten that is to the grand jury.

8            But if we call the actual advisor into the grand

9    jury to testify only about the one topic that's relevant,

10   there is no need for any kind of *in camera* review because

11   the witness is only going to testify about the statements

12   made about that one relevant topic; and that's what is

13   happening here.

14           *In camera* review would be duplicative and

15   unhelpful.  And it would impose a cost because it would

16   impose a whole entire layer of proceedings into the grand

17   jury that would be totally unnecessary.  It would hamper the

18   grand jury, it would impinge on the grand jury's ability to

19   get to evidence quickly and with dispatch.

20           I referred to *R. Enterprises* earlier.  But the

21   idea in that case, throughout it, is the idea that the

22   Supreme Court has regularly rejected procedures in the grand

23   jury that would add little mini trials or collateral issues

24   that would slow down and hamper the grand jury; and that's

25   exactly what would happen here with *in camera* review.  It's

* * * * * SEALED * * * * *

1   not necessary, and it's costly here, Your Honor.

2            THE COURT:  All right.  Any other matters that you

3   want to respond to?

4            MR. PELLETTIERI:  Not unless you have any further

5   questions, Your Honor.

6            THE COURT:  I don't.

7            Is there anything further from the former

8   President's counsel?

9            MR. PARLATORE:  One moment, Your Honor.

10           THE COURT:  You can't have that much more to say.

11           MR. PARLATORE:  The only final point, Your Honor,

12   is -- just going back to that *In re Sealed Case*, the *Espy*

13   case, in that case -- that was a White House investigation,

14   and certain documents were withheld that the special counsel

15   thought contained false statements made to the White House;

16   so that was something where they had a very particularized

17   showing of what it was, what they were seeking; and, you

18   know, here, this is something that's far more speculative

19   and doesn't have that specific showing.  And so, again, this

20   just goes into the question of important evidence just to

21   underscore the specific context in that case.

22           THE COURT:  All right.  Thank you.

23           Okay.  You are all excused.

24           (Whereupon, the proceeding concludes, 2:26 p.m.)

25                      * * * * *

* * * * * **SEALED** * * * * *

## CERTIFICATE

       I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

       This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.

       Dated this 29th day of September, 2022.

       /s/ Elizabeth Saint-Loth, RPR, FCRR
       Official Court Reporter