* <u>THIS PAGE LEFT INTENTIONALLY BLANK</u> *


<u>SEALED MATTER ENCLOSED</u>


<u>AUTHORIZED PERSONS ONLY</u>

```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

IN RE: GRAND JURY SUBPOENA        Case No. 23-GJ-10
GJ 42-17 AND GJ 42-69

UNITED STATES OF AMERICA,          March 20, 2023

            Interested Party,      Washington, D.C.

███████████,

            Interested Party,

DONALD J. TRUMP,

            Interested Party.


  ------------------------------------------------------------
                      SEALED HEARING
          BEFORE THE HONORABLE JAMES E. BOASBERG
          UNITED STATES DISTRICT COURT CHIEF JUDGE


APPEARANCES:

FOR THE UNITED STATES:     John Pellettieri, Esquire
                           Julie Ann Edelstein, Esquire
                           Special Counsel's Office
                           950 Pennsylvania Avenue Northwest
                           Room B-206
                           Washington, D.C.20530

                           Cecil Woods VanDevender, Esquire
                           United States Attorney's Office
                           719 Church Street
                           Suite 3300
                           Nashville, Tennessee 37203


FOR ███████████:           Michael Nathaniel Levy, Esquire
                           Paul F. Enzinna, Esquire
                           Ellerman, Enzinna, Levy, PLLC
                           1050 30th Street Northwest
                           Washington, D.C. 20007

                           Elizabeth Lauren Martin, Esquire
                           Ellerman, Enzinna, Levy, PLLC
```

APPEARANCES (Cont.):

FOR DONALD J. TRUMP:          James M. Trusty, Esquire
                             IFRAH, PLLC
                             1717 Pennsylvania Avenue Northwest
                             Suite 650
                             Washington, D.C. 20006


REPORTED BY:                 Tammy Nestor, RMR, CRR
                             Official Court Reporter

```
 1   The following proceedings began at 9:31 a.m.:

 2           THE COURT:  Good morning, everybody.  Nice to see you.

 3           THE COURTROOM DEPUTY:  Good morning, Judge.  Good

 4   morning.  We are on the record in sealed matter 23-GJ-10, Grand

 5   Jury Subpoena, GJ-42 through 17, and GJ-42 through 69;

 6   Interested party, United States of America, ████████████, and

 7   Donald Trump.

 8           Beginning with counsel for the government, please

 9   approach the lectern and state your name for the record.

10           MR. PELLETTIERI:  Good morning, Your Honor.  John

11   Pellettieri on behalf of the United States.  And with me is

12   Julie Edelstein and Cecil VanDevender.

13           THE COURT:  Okay.  I'm sorry.  Your name?

14           MR. VanDevender:  Cecil VanDevender.

15           THE COURT:  Okay.  Sorry.  That's not on my schedule

16   here.  Can you spell that for me.

17           MR. VanDevender:  Yes, Your Honor.  My last name is

18   V-A-N-D-E-V-E-N-D-E-R.

19           THE COURT:  Great.  Thanks so much.  Welcome to all of

20   you.

21           MR. PELLETTIERI:  Thank you.

22           THE COURT:  All right.  For ████████████?

23           MR. LEVY:  Good morning, Your Honor.  Michael Levy of

24   Ellerman, Enzinna, Levy, along with my partner Paul Enzinna and

25   Elizabeth Martin on behalf of ████████████, who is also
```

1    present.

2          THE COURT:  Okay.  Nice to see all of you.

3          And for Donald Trump?

4          MR. TRUSTY:  Good morning, Your Honor.  Jim Trusty on

5    behalf of President Trump as well as the office of the former

6    President.

7          THE COURT:  Thanks so much.

8          MR. TRUSTY:  Thank you.

9          THE COURT:  Good morning, everybody.

10         Glad to see you all for my first act as Chief Judge.

11    I'm glad they gave me such a light, inconsequential item to

12    start off with, right?

13         So I've read all of the materials.  And let me start,

14    Mr. Levy, with you.

15         So the big question I have, just to start, is what

16    exactly are you seeking to stay?  Because there's several

17    categories, and your motion isn't entirely clear.  And I know

18    you had to move quickly, but seemingly, there are four possible

19    categories of stay, but the motion seems largely confined to

20    sort of the red box material, and so maybe you can make clear

21    what it refers to.

22         MR. LEVY:  Certainly, Your Honor.  The motion for stay

23    and the appeal are much broader than the way the government has

24    interpreted as to just the highlighted in red items.

25         THE COURT:  I'm not sure that that was the

government's fault given the language of the motion, but go
ahead.

     MR. LEVY:  It was all done very quickly, Your Honor,
as you are well aware.

     THE COURT:  Indeed.

     MR. LEVY:  Our position is that ██████████, as an
innocent attorney, and everyone agrees that ████ an innocent
attorney, has a right to appeal the rulings that would force
██ to convey ███ work product, either in testimony or in
documentary form, to the government.  That would include all of
the materials ██████ asserts are, not only ███ opinion work
product, but also ███ fact work product.

     The D.C. Circuit has never held that a crime or fraud
exception as it applies to a client's attorney-client and
attorney work product privilege vitiates the innocent lawyer's
fact work product or opinion work product.  They have never
held that.

     So our position is any ruling that would either compel
███ or has already provided to the government ███ fact or
opinion work product is subject to appeal, and ██should have a
right to appeal that.

     In the context of that, I think ███████ take the
position that ███ testimony should be stayed pending the
resolution of that because it's impossible at this point to
conceive that ███ testimony wouldn't be tainted by the

1   materials that, in our view, were erroneously turned over to

2   the government.

3            THE COURT:  So it seems to me there are four potential

4   categories of testimony or production that ███could be seeking

5   a stay on.

6            So the first is ███ testimony on the ████████ that

7   Judge Howell ordered ███ to testify about.  That's one.

8            The second is the ██████████ in appendix A to her

9   order.

10           The third would be the ██████████ in appendix B1.

11           And the fourth would be the ██████████ in

12   appendix B2.

13           MR. LEVY:  It actually would be all of the material in

14   B2.  In other words, in our supplemental filings, in both of

15   our supplemental filings, we made very clear that it was the

16   position of ██████████ that the entirety of those two

17   documents constitute opinion work product for reasons that I'm

18   happy to explore further with the Court in an ex parte

19   proceeding because it would involve disclosure of materials

20   that have been redacted from the versions even that have been

21   produced to the government.

22           THE COURT:  I'm not following that.  In other words,

23   that the government is not getting material that wasn't --

24   that's been redacted.

25           MR. LEVY:  The government has not gotten material

 1    that's been redacted.

 2         THE COURT:  Right, from both B1, which you have not

 3    yet produced but will, and B2.

 4         MR. LEVY:  With respect to B2, the position that we

 5    took in our supplemental filing, which I believe is correct, is

 6    that the entirety of the documents in B2, not just the portions

 7    that were redacted or the portions that were highlighted in

 8    red, constitute opinion work product.  For reasons that are

 9    made more clear --

10         THE COURT:  Wait.  You are not saying that the non-red

11    box, non-redacted material is opinion work product?

12         MR. LEVY:  I am in the context of the document as a

13    whole for reasons that I think I can make clear in an ex parte

14    discussion.  In the alternative -- and what we said was we

15    believe that the entirety of those documents are opinion work

16    product.  They reflect inherently ▮▮▮▮ mental impressions.

17         In the event the Court disagrees with that, we have

18    identified in red specific portions of it that we believe

19    constitute, independent of the entirety of the document,

20    opinion work product again for reasons that I think are

21    strengthened by items that have been redacted by Judge Howell

22    for reasons that I would be happy to discuss with the Court.

23         So our view is we are seeking a stay with respect to

24    the entirety of B2.

25         THE COURT:  Okay.

```
 1          MR. LEVY:  And then under the Fifth Circuit's ruling
 2    in a case involving Mark Pomerantz and Whitney Adams, we
 3    believe at that point it is appropriate and it's subject to
 4    appellate review, not only with respect to the documents that
 5    were, in our view, erroneously produced by the district court
 6    to the government, but also the documents that the district
 7    court ordered ███████████ to produce.
 8          That case is on all fours with this situation.  It
 9    involved a situation in which two innocent attorneys --
10          THE COURT:  All right.  Let's just make sure we have
11    all the categories set.
12          MR. LEVY:  I'm happy to follow your lead.
13          THE COURT:  Thank you.
14          All right.  So we've got yes, testimony on the six
15    topics or not?
16          MR. LEVY:  I think at this point we would be seeking a
17    stay on that only because it is impossible at this point to
18    know that ███ testimony on the six topics wouldn't be tainted
19    by the government's knowledge, which we don't believe they
20    should have gotten, with respect to the items in B2.
21          THE COURT:  Okay.  And the ██████████ in appendix A?
22          MR. LEVY:  We believe that those are subject to appeal
23    and should be stayed pursuant to the Court's ruling, the Fifth
24    Circuit's ruling, and the analysis there in the Pomerantz-Adams
25    case.
```

1       THE COURT:  And B1, even though ███ redacted those,

2  you would argue that what ███ hasn't redacted would still be

3  covered?

4       MR. LEVY:  Yes.  Again, the same theory with respect

5  to the ██ because our position is that, even if one assumes

6  that the client utilized the services of an attorney, an

7  innocent attorney, to further a crime or fraud, the D.C.

8  Circuit has never held that that vitiates the innocent

9  attorney's independent interest in protecting their fact work

10 product.

11      And, frankly, even the courts that -- even the

12 circuits that have found fact work product can be invaded of an

13 innocent attorney in that context have required a much tighter

14 nexus to establish that the particular piece of work product

15 was used by the client and intended by the client to further

16 the crime or fraud, which we think hasn't been established in

17 this case.

18      And so we would seek to stay the production of those

19 documents as well until the circuit has an opportunity to rule,

20 which it has never ruled one way or the other, about whether

21 fact work product can be overcome by the client's commission of

22 crime or fraud.

23      THE COURT:  Okay.  All right.  Thank you.  I will get

24 back to you momentarily.

25      Mr. Trusty, if you would be so kind, same question for

1   you.

2           MR. TRUSTY:  Well, Your Honor, the rough division of

3   labor that I am about to describe to you kind of tracks the way

4   we argued this case in front of your predecessor and the way

5   the briefing is at least intended to go, which is that

6   President Trump is asserting -- is moving to stay the entirety

7   of it but focusing on the testimonial component and essentially

8   embracing or adopting the more specific component of the

9   documents which were kind of left to Mr. Levy.

10          And I have, I guess, maybe a practical observation or

11  request to make of the Court relating to this.  Your Honor,

12  there's been great frenetic energy, great urgency, and

13  deadlines and in moving papers in a very weighty matter, as the

14  Court kind of jokingly acknowledged this morning.  And the

15  reality is I think the Court and the parties would benefit from

16  at least a little breathing space to actually fully brief the

17  issues.

18          You know, we took a shot at briefing on behalf of the

19  President yesterday afternoon.  By the time we got it filed, we

20  had received but never had a chance to even incorporate the

21  86-page ruling.  We think that there's really significant

22  matters and tremendous factual disagreements that were kind of

23  glossed over by your predecessor that we want to bring to light

24  in a more fulsome series of pleadings.

25          Now, I'm not suggesting we have to slow down and talk

1    about weeks or months.  What I am talking about is still a

2    matter of days.  But I think it would be appropriate for the

3    parties to be allowed to have a more standard form of briefing

4    over the course of this week to give the Court, I think, more

5    guidance hopefully or something more helpful and then to come

6    back and argue the merits of this, you know, sometime next

7    week.

8            I'm not talking about significant delays, but we are

9    talking about a case that probably began in 2021, certainly

10   began before the subpoena of May of 2021, certainly --

11           THE COURT:  Right, but that seems to weigh against you

12   because how long did it take to comply with the subpoena which

13   was appropriately authorized in May of 2022?  And here we are

14   in March.  I mean, that's not on the government.  That's on you

15   and your client.

16           MR. TRUSTY:  Well, but the attorney-client component

17   is fresher than the general -- I mean, the battleground that we

18   have had repeatedly with various motions and rulings from the

19   Court or even suggestions from the Court rather than a specific

20   ruling has been about the adequacy of the search.  And that's

21   part of the factual record that we think is, frankly,

22   mischaracterized and was adopted without any real analysis by

23   your predecessor.

24           We think that's the type of information that would be

25   very helpful, at least, again, not to revisit the entirety of

1    the merits, but for the Court to have a very informed position

2    on the stay.

3         You know, again, we are not running up against a

4    statute of limitations issue.  I would just say that, you know,

5    we can bicker over kind of who's to blame for various delays or

6    all sorts of fundamental things in this case, but the reality

7    is there's no big difference to the government's investigation

8    between fulsome briefing on the stay and an informed decision

9    by this Court in a week as opposed to kind of scrambling like

10   we are at this moment.

11        THE COURT:  But that seems to imply that Judge

12   Howell's decision was hasty and needs to be more thought out.

13   She wrote an 86-page opinion.  I spent plenty of time this

14   weekend reading it very carefully, the amount of detail and the

15   care put into that.  I also look at, am I, in 24 hours -- and I

16   know we are all busy, but it would have been more helpful to

17   get your brief earlier than 8:00 p.m. on Sunday when the

18   government had to respond at 3:00 p.m. on Sunday, but that now

19   I should discard all that and say I want to take a fresh look

20   at it?

21        MR. TRUSTY:  I don't think it's an entirely fresh look

22   in terms of, you know, revisiting every aspect of the process

23   that long predates even that 86-page ruling.  I'm not

24   suggesting this in a way where I think that the Court could

25   issue a stay and that that necessarily expresses some sort of

1    disrespect for the thoughtfulness of the process that's gone

2    before you.

3        But we are dealing with historic unprecedented issues

4    that are not particularly black and white when it comes to some

5    of the case law in this circuit and beyond.  And, you know, our

6    view is, whatever this Court, meaning Your Honor, is going to

7    end up doing ought to be the benefit -- or should be benefited

8    by having every opportunity to hear in a fulsome manner, not

9    kind of a scramble-over-the-weekend manner, from both parties.

10       Again, it's not to suggest that we have to bury you

11   with paper to make your job more difficult.  I think there's

12   things that we can shed light on, particularly from what we

13   have seen in recent days from the government's submissions,

14   that would be extremely helpful on determining whether a stay

15   should, in fact, be granted.

16       THE COURT:  Like what?

17       MR. TRUSTY:  Well, like, you know, the heart of the

18   government's case really when it comes to almost anything that

19   flows forward is from June 3.  On June 3, when Jay Bratt from

20   the Department of Justice and FBI agents were allowed to come

21   to Mar-a-Lago to discuss subpoena compliance, which was an

22   ongoing process of conversation with ███████████, on June 3,

23   they were provided with a Redwell folder full of materials.

24       We have seen just from the government's own

25   characterization strikingly different versions of what

1  supposedly was said by ██████████ to Mr. Bratt. ██████████

2  did not say the things in either of the versions that we have

3  been able to see.  And there's plenty of redactions that

4  seemingly have nothing to do with the sanctity of the

5  investigation or the security, including about June 3.  So we

6  don't know every version --

7            THE COURT:  I don't think the opinion really relies on

8  that.

9            MR. TRUSTY:  Well, Your Honor, if all of the attempts

10 to say that President Trump's attorneys or President Trump have

11 not complied with the subpoena, that there's an obstructionist

12 angle and that's the whole basis, I assume that's the at least

13 primary basis for their crime fraud exception, a lot of that,

14 the genesis is this conversation on June 3.  And so, for

15 instance, if we were --

16           THE COURT:  I don't think so.  I mean, not from my

17 reading of the opinion.  Have you read the opinion that was

18 released?

19           MR. TRUSTY:  I have not been able to read the 86-page

20 opinion because I was --

21           THE COURT:  I think it's awful tough -- but I thought

22 you are standing here saying, Judge, we need to slow this train

23 down because there's a lot in that 86-page opinion that is

24 wrong.  Isn't that what you are saying?

25           MR. TRUSTY:  No.  I have said prior to that, we have

 1  already identified several areas of mischaracterizations by the

 2  government and put that forth before your predecessor, who --

 3          THE COURT:  So does she rely on them in the opinion or

 4  not?  You don't know because you haven't read it?

 5          MR. TRUSTY:  Well, I have not been able to physically

 6  read the opinion yet.

 7          THE COURT:  Wow.  Okay.

 8          MR. TRUSTY:  I apologize for that.  I'm not happy to

 9  acknowledge that.  But the way the workload broke yesterday

10  afternoon in terms of the levels of review that we have to

11  undertake kept me busy --

12          THE COURT:  And again, we were all busy.  I was a lot

13  busier this weekend than I had hoped to be.  And I understand

14  you can't read something and write a motion at the same time

15  and do three other things at the same time.  I respect that.

16          But my inference from the motion and from what I heard

17  you say today is that her opinion is wrong because it relies on

18  things that in part aren't true.  But you are not saying that,

19  actually.

20          MR. TRUSTY:  Well, I have that secondhand, that that

21  central moment, what I view as a central moment, on June 3 is

22  still mischaracterized within the Court's opinion as well.  But

23  I can't sit here and tell you the page of the opinion.  I'm

24  just telling you that's from conversation with cocounsel.  So

25  again, it's not a particularly comfortable position to say I've

1    been outread by the Court overnight.  I get that.

2          THE COURT:  I got it before you did --

3          MR. TRUSTY:  Well, look --

4          THE COURT:  -- so I had a head start.

5          MR. TRUSTY:  I should have still tried to catch up

6    better than I did.  I know what I'm doing today.

7          But the bottom line, Your Honor, is, you know, even if

8    you want to attribute some degree of negligence or whatever to

9    counsel --

10         THE COURT:  No, no, I'm not attributing that.

11         MR. TRUSTY:  All I'm saying is no matter how harshly

12    you might view the absence of my ability to analyze that

13    opinion right now, I don't think, under all of the

14    circumstances, for something as important as a stay, that it's

15    an unreasonable request to have a few days to fully brief it.

16         Let me just add there's a last practical component to

17    this, which is, in other related matters involving the

18    investigations into President Trump, we have had all sorts of

19    litigation relating to executive privilege as opposed to

20    attorney-client and work product.

21         Every time we have a ruling allowing for the vitiation

22    of that privilege, the overcoming of that privilege because of

23    the grand jury's wide reach, there is a race to get the witness

24    in the grand jury.  And the witnesses are put before the grand

25    jury same week as the ruling or very soon thereafter.  And so

1    the circuit almost inevitably doesn't really review these cases

2    because they say, it's moot now, they have already testified.

3          That's a strategic decision by the government.  Maybe

4    I would have done the same thing in my 27 years as a

5    prosecutor.  I'm not saying there's anything outrageous about

6    that.  But for something this important, it really negates the

7    ability to have third party judicial review of things that are

8    extremely important.

9          So that's my main point here is to, not to get into

10   the merits unless you want to today, but primarily to suggest

11   that using more time of just this week, I think, would benefit

12   and crystallize some of the issues, the factual disputes, and

13   maybe fine-tuning some of the arguments that we tried to make,

14   you know, hurriedly yesterday.

15         THE COURT:  Okay.  Thanks so much.  I appreciate it.

16         Mr. Levy, let me return to you.

17         So when we look at the stay factors, let's talk about

18   irreparable harm for a minute.

19         So let's say -- I mean, there's sort of two scenarios

20   absent a stay which relate to how quickly the Court of Appeals

21   moves and how quickly any prosecution moves.

22         So under the first and what I would assume the more

23   likely scenario, which is that the Court of Appeals is able to

24   act before there's any criminal trial, so I don't issue a stay,

25   it goes up to the Court of Appeals, and they find that Judge

1    Howell erred in some scope of her ruling and they say,

2    government, you can't use these documents that ████████

3    turned over to you and you can't use ███ testimony at trial

4    because we find that you, the Court, incorrectly limited ███

5    privilege, why isn't that a reasonable remedy?

6         MR. LEVY:  Because that conflates the interest of

7    ████████████  and the interest of █████████████ client.  And

8    that's a mistake that has commonly been made in the discussion

9    of all this.

10        The innocent attorney has an independent interest in

11   protecting their attorney work product separate and apart from

12   the client.  That's why the government's cite to Mohawk is so

13   inapposite, right, because in Mohawk, and in the situation that

14   you just described, the litigant may have an opportunity to

15   litigate and ultimately defend their interests.  ████████████,

16   as an innocent attorney, is never going to get indicted.  ████

17   interest is purely in protecting the privacy of ███████ work

18   product, and that interest is forever lost without a stay.

19        THE COURT:  And I think you are making a good point,

20   but why don't we then think hard about the distinction between

21   fact and opinion work product in such a scenario?

22        MR. LEVY:  And I think we should.  And I think that's

23   one of the issues that we intend to appeal, because the D.C.

24   Circuit, since 1982 when Judge Skelly Wright wrote his opinion,

25   has said that the blameless attorney has an independent

 1   interest in their work product.  And the D.C. Circuit has never

 2   said that that interest is less for fact work product than for

 3   opinion work product.

 4           So we believe that, in order in the D.C. Circuit for

 5   them to invade fact work product, the government needs to

 6   establish that they have a substantial need, and they haven't

 7   done that.

 8           Even if the D.C. Circuit were to pursue the line of

 9   cases that some other circuits --

10           THE COURT:  Hold on.  The need is pretty substantial

11   here.

12           MR. LEVY:  They haven't established that they have a

13   substantial need for the work product.  And this was an

14   argument that I made before Judge Howell.  They haven't

15   established a substantial need for the underlying work product

16   as opposed to the facts.  But now that they have gotten the

17   underlying work product, they have invaded that work product,

18   the effort to get the facts is tainted.  And that's the

19   problem.  If it were just the underlying facts, this wouldn't

20   be an issue.  But by going for his work product, they have

21   created this issue.

22           THE COURT:  So the difference between the underlying

23   facts and the factual work product is?

24           MR. LEVY:  Is that the fact work product is

25   ████████████ recordation and recollections and work as

1  opposed to the communications that ███ had with ███ clients or

2  what ███ did or what ███ said or what others said. ███ could have

3  testified to all those things without invading ███ fact work

4  product. But instead, the fact work product would be invaded

5  here in addition to invasion of the opinion work product, and

6  that's the concern that we have.

7       THE COURT: Where is the harm? In other words, if

8  ███ -- where is the irreparable nature of the harm? In other

9  words, if you say, ███ could testify, we don't have any problem,

10  at least for ███, the client may have a problem, but there's no

11  problem with ███ testifying about what ███ was told, ███

12  conversations with his client, but if ███ memorializes those

13  conversations, then there's a big problem.

14       MR. LEVY: Well, and this is where the fact opinion

15  work product distinction gets so nebulous. And I'll readily

16  concede that. But the point here is, when there is -- and I

17  think the distinction does blend. There's sort of a spectrum,

18  if you will. But when the attorney's mental impressions are so

19  intermingled with the facts that they reflect ███ mental

20  impressions, that is invading ███ work product, it's invading

21  ███ mind.

22       THE COURT: What it seems to me you are arguing is

23  that opinion work product should be given a broader definition

24  than maybe Judge Howell gave it.

25       MR. LEVY: That is certainly part of what we are

 1   saying.  We are also saying that the D.C. Circuit has not found

 2   that invasion of fact work product is appropriate when a client

 3   commits a crime of fraud.  And so I think that's an open issue

 4   to be discussed and debated before this circuit.

 5        But beyond that, certainly we believe that there's --

 6   that all of B2 and certainly portions of B2 that were not

 7   redacted are opinion work product, again, for reasons I am

 8   happy to describe in further detail ex parte.

 9        THE COURT:  Okay.  Thank you.

10        Let me just hear from the government.  Do you want to

11   address the irreparable harm issue that I was talking about,

12   Mr. Pellettieri?

13        MR. PELLETTIERI:  Sure, Your Honor.  As I see it, the

14   submission from ██████████ is that simply disclosing the work

15   product itself is automatically irreparable harm.  And we don't

16   see the precedent as establishing that or the individual

17   circumstances here as establishing that.

18        I think Mohawk itself undermines that position, the

19   idea that the simple fact that a communication, in that case an

20   attorney-client communication, is no longer confidential is not

21   enough to make it irreparable -- the harm to be irreparable.

22        There are other remedies, whether it's appeal from a

23   final judgment later or use or, in fact, in one aspect that's,

24   I think, relevant here is that this is in the context of a

25   grand jury investigation where at present everything is subject

1    to grand jury secrecy.

2          So I think that even in Mohawk, the Supreme Court

3    mentioned the fact that there was a protective order there.  So

4    all of this goes toward protecting the confidentiality of the

5    communications here, and there's really no substantial

6    irreparable harm in this case.  But I would also --

7          THE COURT:  Go ahead.

8          MR. PELLETTIERI:  I would also say that irreparable

9    harm is just one factor in the stay analysis.  And it's -- and

10   I think Nken makes clear that even if there is irreparable

11   harm, even if you assume there's irreparable harm, that that

12   alone is not enough to grant a stay.

13         I think the paramount factor is the likelihood of

14   success on the merits.

15         THE COURT:  Right.  So Mr. Levy's argument is, this

16   is -- and it would be an issue of first impression in the

17   circuit, and so that's -- and it's close enough and high stakes

18   enough that that's sufficient on the first prong.

19         MR. PELLETTIERI:  Mr. Levy has not pointed to one case

20   anywhere where a court has held that fact work product is not

21   vitiated by the crime fraud exception.  We are not aware of any

22   case.  I mean, that would be an exceptional ruling.  That would

23   be breaking new ground considerably.

24         In fact, to the extent there's differences in views,

25   there's authority indicating that opinion workshop product

1    should also be vitiated by the crime fraud exception.

2           Clearly when the client him or herself is claiming

3    work product, both opinion and fact are automatically vitiated

4    when the crime fraud exception applies.  When the lawyer

5    independently makes a work product claim, yes, there are

6    several circuits who have held that opinion work product is

7    off, but that fact work product is vitiated.

8           I don't know if you saw the briefing in front of Judge

9    Howell fully, but the restatement takes a contrary view, that

10   both opinion and fact are off the table even if the lawyer him

11   or herself makes an independent work product claim.  We think

12   that's right.  But here we took a very cautious approach and

13   said we are not seeking opinion because we didn't feel it was

14   necessary to get into all sorts of satellite litigation over

15   this.  We are happy to just seek fact work product.  That's the

16   reason we went down this route, to just go on indisputable law,

17   settled law, and that's why there's no likelihood of success on

18   the merits here.

19          THE COURT:  Let me go back to one point on irreparable

20   harm, which is, you folks cite Mohawk, and I know Judge

21   Friedrich cited Mohawk in her opinion in Broidy, B-R-O-I-D-Y.

22   Mr. Levy says we can distinguish that case because -- first of

23   all, he doesn't argue this, but maybe it's relevant, that it's

24   not -- it's a civil case, not a criminal case.  But the second,

25   his main point is here we have an innocent attorney again, and

1    I think based on Judge Howell's opinion, that's how she would

2    largely characterize, I think -- and I am not making any

3    finding certainly whether ██████████ acted entirely

4    appropriately or not.  I'm not prepared to make any such

5    finding because I don't know enough, and it's certainly not

6    required at this point.

7        Assuming Mr. Levy's argument -- assuming his

8    characterization is correct, that his client is an innocent

9    attorney here, should that distinguish Mohawk?

10        MR. PELLETTIERI:  No.  We are not aware of anything --

11    Mohawk didn't even involve the crime fraud exception.  It just

12    involved attorney-client privilege.  There was no issue of

13    attorney complicity in any kind of misconduct as far as we are

14    aware of in the Mohawk decision.

15        And it really just dealt with the idea that an

16    intrusion into confidentiality between attorney and client is

17    not something that's immediately appealable under the

18    collateral order doctrine.  And in reaching that conclusion, it

19    discussed a lot of these issues regarding irreparability.  We

20    agree they weren't dealing with a stay motion there, so it's

21    not necessarily directly on all fours.  But it severely

22    undermines the notion that there is irreparable harm here.  And

23    we would note that the primary submission, I believe in

24    ██████████████ brief, is that the Philip Morris decision from

25    the D.C. Circuit is really -- they rely principally on that.

```
 1   That was abrogated by Mohawk, and their reasoning was rejected
 2   there.
 3           Now, Mohawk didn't deal with the stay portion of the
 4   Philip Morris opinion, but really, in rejecting all the
 5   reasoning in Philip Morris, I think it severely undermines the
 6   idea that irreparable injury is automatic whenever there is an
 7   intrusion into any kind of attorney-client confidentiality.
 8           I would also note that the idea that this is some sort
 9   of personal privacy interest from ███████████ is not
10   consistent with our understanding of the work product
11   privilege.  I think that the D.C. Circuit in the Moody case
12   made clear that it's not intended to protect any kind of
13   personal privacy interest.  It's intended to protect a privacy
14   interest that serves the adversary system.
15           When the privacy interest and intruding on it does not
16   serve the adversary system, there's really no kind of
17   independent privacy interest that the attorney him or herself
18   has that any warrants any kind of protection there.
19           That's why we think, actually, Moody suggests that the
20   D.C. Circuit could go with the restatement way, but we are not
21   asking any kind of --
22           (There was an interruption by the court reporter.)
23           THE COURT:  Go the restatement way.
24           Thank you very much, Mr. Pellettieri.
25           Mr. Levy, I will give you a brief rebuttal on
```

1    Mr. Pellettieri's characterization of the law.

2         MR. LEVY:  With all due respect to the American Law

3    Institute, the restatement is not the law.  And the courts have

4    been very clear that the innocent attorney is treated

5    differently than the client.  And that relates as well to the

6    idea of Mohawk.  Mohawk involved the attorney-client privilege,

7    which belongs to the client, not the lawyer, all right, and

8    involved waiver of that by a party in civil litigation who

9    would have an opportunity to seek redress upon final judgment

10   of that case.  That is absolutely not the case here.

11        If an independent attorney's interest in their

12   attorney work product is to be appealable, it has to be

13   appealed at this stage because there is no other opportunity to

14   appeal it.  That's the irreparable harm.  If ███doesn't get

15   an -- if there's not a stay and a chance to appeal, ███never

16   has a chance to assert that.

17        THE COURT:  So let me go back to my earlier question

18   to you, which is why is it irreparable ███ that ███ fact

19   work product is disclosed, particularly, as Mr. Pellettieri

20   points out, in the context of a grand jury investigation, in

21   other words, not where it's required to be publicly docketed or

22   set forth?  What is irreparable particularly when you say that

23   the facts themselves, there's no damage from disclosure of the

24   facts themselves?

25        MR. LEVY:  I understand your point.  It may be that

 1   there's a difference in the irreparability with respect to fact

 2   work product and opinion work product.  To me there's clearly

 3   irreparable harm when it comes to opinion work product.

 4          THE COURT:  And you may well be right about that.  You

 5   make a good argument about that.  But that's not being

 6   disclosed.

 7          MR. LEVY:  It is being disclosed.  It already has been

 8   disclosed.  Again, our position is, and I'm happy to argue it

 9   ex parte and I think it's important for us to be able to make a

10   record on this, that the entirety of B2 is opinion work

11   product, and certainly some of the portions that we highlighted

12   in red are opinion work product on their own two feet.

13          THE COURT:  I mean, I have read B2 carefully, and I

14   think that's a tough argument to make.

15          MR. LEVY:  We think, if I can just say generally --

16          THE COURT:  Sure.

17          MR. LEVY:  -- ███████████████████████████████████

18   ███████████████████████████████████████████████

19   ███████████████████████████████████████████████.

20          THE COURT:  ████████████████████████████████

21   █████████████    ████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████    ████████████████████████████

24   ██████████████    ████████████████████████████████

25          MR. LEVY:  ████████████████████████████████



```
1
2
3
4
5    THE COURT:
6
7
8
9    MR. LEVY:
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    ████████████████████

2         And so with that, substantially in our view,

3    legitimate questions on appeal, and the fact that without a

4    stay, there is no other way for ██████████ to protect ██

5    opinion work product, we submit a stay is appropriate.  It's

6    the only way for ██ to ever have a chance to appeal this.

7         THE COURT:  All right.  Thank you very much.

8         I am going to deny the request for a stay, but I will

9    give ██████████ 48 hours, in fact, until noon on Wednesday to

10   comply with Judge Howell's order, which gives you time,

11   Mr. Levy, and you, Mr. Trusty, to seek Court of Appeals

12   assistance and administrative stay in the Court of Appeals.

13        Again, I am not giving you 5 hours or 3 hours or even

14   24 hours.  I am giving you 48 hours, which I think is enough

15   time to get to the Court of Appeals and seek an administrative

16   stay.  And you may well get that, and it may well go -- you may

17   well get an appeal.

18        My reasons are as follows.  And you both make good

19   arguments, Mr. Levy and Mr. Trusty.  And I think if it does go

20   on appeal, I will be very interested to see what the Court of

21   Appeals says, Mr. Levy, on some of these nuanced and difficult

22   issues that you raised.

23        But the four stay factors everybody knows.  They are

24   set forth in the briefs.  As to the first, the likelihood of

25   prevailing on appeal, and again, it doesn't have to be likely

    1    or probable, but in my reading, my careful reading, of Judge

    2    Howell's lengthy opinion, which also the government argues is

    3    reviewed on an abuse of discretion standard -- and I'm not sure

    4    that's right, but it may be.  But I find her opinion to be

    5    strong and convincing and clear, and I don't believe that the

    6    defense has sufficiently -- it's somewhat difficult to show

    7    that she's wrong without more time to digest and look at her

    8    opinion.  But my review of the opinion, it seems to me a strong

    9    opinion and one that is not likely to be overturned on appeal.

   10         As to irreparable harm, again, this is interesting.

   11    I'm not sure I would go so far as the government does in saying

   12    that Mohawk would say you could never have irreparable harm in

   13    this situation, because there's always a post-judgment remedy.

   14    I'm not prepared to go that far.  But I do think here that

   15    where it is likely that the Court of Appeals would rule before

   16    any trial occurred and the Court of Appeals could bar the use

   17    of ███████████      testimony or the documents that ███has to

   18    produce under this order and the fact that this is secret in a

   19    grand jury and is not going to be publicly available, that ███

   20    fact work product is not the disclosure of that at this stage

   21    which again can be clawed back from the government ultimately

   22    is not irreparable.

   23         I think that Mr. Levy makes an interesting argument

   24    that it's all opinion work product and Judge Howell's

   25    distinction between fact and opinion isn't tenable.  But at

1  this point, I don't think that that's correct.  I think that

2  lots of opinion has been redacted, and she's done that

3  carefully.

4          And even if I didn't agree with every single sentence

5  in the red box about where it went, I think that this

6  distinction is sufficient, that it is not irreparable to

7  ██████████ that ██ has to testify and that these documents be

8  disclosed given the likelihood that, if Judge Howell was wrong,

9  that ██ wouldn't have to testify at trial and the documents

10 would be taken back, and this is secret so ██ not -- ██ work

11 product is not disseminated into the public domain.

12         Finally, the last two factors merge, as everyone

13 agrees, which is harm to others and the government and also the

14 public interest.  Here this tips strongly in favor of the

15 denial of the stay given that the case is of great importance.

16 There is a premium on moving this case through with expedition.

17 There have been lengthy delays already, which I place at the

18 feet of the former President, not the government.  And the fact

19 that there is a special counsel and a desire in the great

20 public interest to move this case along quickly, that favors

21 not staying the matter.

22         So I will, as I said, deny the stay.  But I will order

23 that ██████████ need not comply with Judge Howell's order in

24 terms of testifying or producing documents until Wednesday,

25 May 22 at noon.

```
 1              Any questions or clarifications that anybody wishes,
 2    Mr. Pellettieri?
 3              MR. PELLETTIERI:  Yes, Your Honor.  We would just like
 4    a clarification.  Does this also include the former President's
 5    motion for a stay as well?
 6              THE COURT:  Thank you.  Yes.  I'm sorry.  I did not
 7    make that clear as I should have.  For the same reasons that I
 8    deny ████████████ motion for a stay, I deny former President
 9    Trump's motion.
10              MR. PELLETTIERI:  Thank you, Your Honor.
11              There's one housekeeping issue.  Out of an abundance
12    of caution, because it does deal with the ex parte Exhibit B2
13    and something that's in it, I don't know if the former
14    President's attorney should or should not be here.  It might
15    make sense, out of an abundance of caution, for them not to be
16    here just because it deals with an action point in that order
17    that was supposed to happen by 2:00 p.m. today, and I wanted to
18    make clear whether --
19              THE COURT:  Which was relating to the dissemination?
20              MR. PELLETTIERI:  Yes.  And we just wanted to --
21              THE COURT:  Okay.  I'll just ask, Mr. Trusty, if you
22    will just step out for a minute.
23              MR. TRUSTY:  Sure.
24              THE COURT:  Thanks.
25              (Mr. Trusty exited the courtroom.)
```

```
 1          THE COURT:  Go ahead.

 2          MR. PELLETTIERI:  I just thought in lieu of filing a

 3   status report, maybe we could do that orally here.  I think

 4   that the request --

 5          THE COURT:  I'm sorry, just one second.

 6          Mr. Pellettieri, can you remind me the status report

 7   that is due.

 8          MR. PELLETTIERI:  It asks the parties to inform the

 9   Court our position on whether the two documents as redacted

10   should be disclosed to the former President.

11          THE COURT:  Oh, right.  Okay.

12          MR. PELLETTIERI:  The government's position is that

13   the order and the documents should not be directly disclosed.

14   It's grand jury material.  But we do recognize that this is

15   ██████████████ work product, and ███ can do what ███ wants with

16   ███ underlying work product if ███ wants to share it with ███

17   client.  So we don't see any basis to stop ███ from doing that,

18   but the actual document as redacted should not be disclosed

19   from the Court to the former President.  That's our position.

20          THE COURT:  Mr. Levy, your position on that?

21          MR. LEVY:  Our position is very similar.  Our position

22   is the Court should not have provided it to anybody other than

23   us and, therefore, the Court shouldn't provide it to anybody

24   but us.  And ██████████████ has a right to share it or not share

25   it with whomever ███ wants.
```

```
 1              THE COURT:  Okay.  All right.  I will not order it to
 2     be disseminated to the former President.
 3              Other issues?
 4              MR. PELLETTIERI:  One more brief housekeeping.
 5              THE COURT:  Should he, Mr. Trusty, be here for this?
 6              MR. PELLETTIERI:  No.
 7              THE COURT:  Okay.
 8              MR. PELLETTIERI:  We informed Mr. Levy that we would
 9     like ████████████ to appear in the grand jury this Friday.
10     Typically, you know, that's grand jury information that we
11     would not share with the former President.  I think in this
12     circumstance, given that, as Your Honor has suggested, they may
13     want to seek relief in the Court of Appeals, we would ask for
14     permission to disclose that to the former President to let him
15     know --
16              THE COURT:  That the subpoena is to testify this
17     Friday?
18              MR. PELLETTIERI:  Yes.  It's not a separate subpoena.
19     It's based on the prior subpoena.
20              THE COURT:  Okay.  I will so authorize.
21              MR. PELLETTIERI:  Thank you, Your Honor.
22              THE COURT:  Mr. Levy, anything in addition?
23              MR. LEVY:  No, Your Honor.  Thank you.
24              THE COURT:  Okay.  Thank you.
25              Will you get Mr. Trusty.  Do you have something else?
```

```
 1              MR. PELLETTIERI:  He can come back for the last point.

 2              (Mr. Trusty entered the courtroom.)

 3              THE COURT:  There's another point by the government,

 4    Mr. Trusty, that you are allowed to hear.

 5              MR. PELLETTIERI:  The last point is we would just like

 6    to ask for -- orally asked for permission to order the sealed

 7    transcript of the hearing, Your Honor, so we don't have to file

 8    a written request for that.

 9              THE COURT:  No, you never have to -- I mean, I think

10    just as long as you arrange with the court reporter, but I

11    don't need to authorize that.

12              MR. PELLETTIERI:  Our practice in the past is that we

13    have had to do that.

14              THE COURTROOM DEPUTY:  Because these are sealed

15    proceedings, so you have to issue an order.

16              THE COURT:  Sorry.  I guess you do have to -- I think

17    you can just submit the proposed order.  Have they been

18    docketed?

19              THE COURTROOM DEPUTY:  You can send me the order.

20              THE COURT:  Have they been docketed, the requests have

21    been docketed or not?

22              THE COURTROOM DEPUTY:  Send the motion to Shadelle as

23    you do with any other motion, and the order can come to me, and

24    I will docket it.

25              MR. PELLETTIERI:  We were hoping that -- we are happy
```

```
 1    to do that if that's what you prefer, but if we could do it

 2    orally, that would preclude the need to go through the

 3    paperwork.

 4            THE COURT:  That's fine.  I'm happy to orally order

 5    that.

 6            (There was an interruption by the court reporter.)

 7            THE COURT:  Good.  Okay.  I grant it.

 8            MR. PELLETTIERI:  Thank you.

 9            MR. LEVY:  With respect to all parties present, Your

10    Honor?

11            THE COURT:  Yes, of course.

12            Mr. Trusty, any questions or clarifications from you?

13            MR. TRUSTY:  No, Your Honor.  Thank you.

14            THE COURT:  Again, all of this obviously moves very

15    fast.  I know you folks have been working hard.  I appreciate

16    it.  Thanks for your arguments.  Thanks for your points.  And

17    we will see what happens upstairs.  Thank you.

18            (The hearing concluded at 10:22 a.m.)

19                              -  -  -

20

21

22

23

24

25
```

```
1

2                    C E R T I F I C A T E

3

4          I hereby certify that the foregoing is an

5    accurate transcription of the proceedings in the

6    above-entitled matter.

7

8

9    3/21/2023              s/ Tammy Nestor
                            Tammy Nestor, RMR, CRR
10                          Official Court Reporter
                            333 Constitution Avenue NW
11                          Washington, D.C. 20001
                            tammy_nestor@dcd.uscourts
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```